**Christine VAUGHN and Marion Gee, Appellees,**

**v.**

**WESTINGHOUSE ELECTRIC CORPORATION, Appellant.**

**No. 79–1561.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1980.

Decided April 23, 1980.

James W. Moore, Friday, Eldredge & Clark, Little Rock, Ark., for appellant.

Zimmery Crutcher, Jr., Little Rock, Ark. (argued), and John W. Walker, Little Rock, Ark., on brief, for appellees.

Before GIBSON, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an appeal by defendant-appellant, Westinghouse Electric Corporation (Westinghouse), from the district court's [1] finding of racial discrimination by Westinghouse against plaintiff-appellee, Christine Vaughn. The district court held Vaughn prevailed on her claim of disparate treatment because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* On appeal Westinghouse alleges (1) the district court misapplied the appropriate burden of proof standards and (2) the district court's factual findings are clearly erroneous. We affirm.

I. Background

The district court found against two other plaintiff employees in this case and found against Vaughn on all claims except her claim that Westinghouse was guilty of race discrimination when it disqualified her as a sealex machine operator. *Vaughn v. Westinghouse Electric Corp.*, 471 F.Supp. 281 (E.D.Ark.1979). Neither Vaughn nor the other plaintiffs have filed a cross-appeal concerning these findings. Therefore, the only issue before us is whether the district court properly found Westinghouse had discriminated against Vaughn because of her race in disqualifying her as a sealeax machine operator.

Vaughn, a black, was hired by Westinghouse on July 13, 1970, as a sealex machine operator, labor grade 4, at $2.20 per hour. On November 16, 1970, she was transferred to a second shift section under the supervision of O. D. Brazil as a sealex machine operator and was earning $2.54 per hour.

1. The Honorable Richard S. Arnold, United States District Judge for the Eastern District of Arkansas. Judge Arnold assumed the office of Judge of the United States Court of Appeals for the Eighth Circuit on March 7, 1980.

On January 25, 1971, she was changed from second to third shift due to a reduction in force, though she testified she preferred the second shift. She continued as a sealex operator under C. T. Turnage on the third shift and was earning the top wage rate of $2.69 per hour for sealex operators. On April 19, 1971, she was disqualified as a sealex operator by Turnage and placed on an open labor grade 1 job of bulb-loader-hand earning $2.45 per hour. She has continued to work at Westinghouse and at the time of trial was working as a packing operator-sleeving, labor grade 3, at the rate of $5.40 per hour.

At the time Vaughn was transferred from sealex operator on the second shift, Brazil, as her supervisor, completed an employee evaluation form concerning Vaughn's performance. It was dated January 20, 1971, and stated her quality and quantity of production were poor, and that he would not rehire her because of her problems making production. On the other hand, it stated she got along well with others and presented no supervisory problems. Additionally, a form dated January 18, 1971, and signed by both Brazil and Vaughn, stated she had had previous satisfactory experience as a sealex machine operator under Brazil on the second shift. Thus the district court concluded her work under Brazil did not present serious enough problems to label it unsatisfactory.

Under Turnage's jurisdiction, Vaughn was verbally warned on March 9, 23, 24, 30 and April 15, 1971, that she was having production problems, including what Turnage felt was an inadequate number of lamps sealed, and too many burnt wires. Turnage made notes of these verbal warnings, which were introduced at trial. During his talk with Vaughn on April 15, 1971, he apparently informed her that if she did not improve, he would have to use "stronger disciplinary action." On April 19, 1971, she was disqualified from her job as sealex operator. Vaughn disputed that she had prior warnings of this action, and testified she felt she was disqualified under orders from the front office, and was unsure of the reasons why. Turnage's notes from the meeting indicated it was due to her dislike for the job and the number of burnt wires. The disqualification form noted she could not hold this job in the future and stated that although she got along well with others and had good attendance, he was unable to motivate her and she showed no interest in the job as sealex machine operator.

The district court held that plaintiffs had established a prima facie case of racial discrimination under the rationale of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Vaughn v. Westinghouse Electric Corp., supra*, 471 F.Supp. at 286. It then held that Westinghouse failed to demonstrate proof sufficient to overcome plaintiffs' prima facie case with respect to Vaughn's disqualification. *Id.* at 289–90. It awarded Vaughn back pay of $1,696.25, to continue to run in her favor until she was given an opportunity to bid on a sealex machine operator job. *Id.* at 291.

II. Analysis

Under *McDonnell Douglas*, a Title VII case is divided into three phases. First the plaintiff must demonstrate a prima facie case of racial discrimination. Then the defendant has the burden of "articulating" or "proving" a legitimate nondiscriminatory reason for its action. If this is done, plaintiff is afforded an opportunity to show that the proffered reason is a pretext for what is in fact illegal discrimination. Clearly the burden on the defendant is one of production; the ultimate burden of persuading the fact-finder that there has been illegal discrimination resides always with the plaintiff. This court has recently clarified its understanding of the order and allocation of proof in a disparate treatment situation, *see Kirby v. Colony Furniture Co.*, 613 F.2d 696 (8th Cir., 1980).

Westinghouse expresses some dissatisfaction with the district court's finding that the plaintiffs demonstrated a prima facie case but does not appeal from that portion of the lower court's decision.

The requirements for demonstrating a prima facie case of disparate treatment were stated in *McDonnell Douglas* to be:

(i) that [the employee] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824.

The Supreme Court noted that the proof required to establish a prima facie case will necessarily vary in different factual situations. *Id.* at 802 n. 13, 93 S.Ct. at 1824. In analyzing the case the district court applied the *McDonnell Douglas* approach to the disqualification situation. It found a prima facie case to be demonstrated because (1) Vaughn belonged to a racial minority; (2) she was employed as a sealex operator having been originally qualified; (3) she was disqualified; and (4) following the disqualification Westinghouse employed another person (in fact a white person) to occupy her former position. The district court relied on statistics indicating disparate treatment in the employment of blacks at the Little Rock plant, *see Vaughn v. Westinghouse Electric Corp., supra,* 471 F.Supp. 284–85; on the testimony of the parties; and on the specifically credited testimony of a plant worker, Wilma Donley, who testified to individual instances of discriminatory treatment. *Id.* at 285–86.

■ Having conceded the plaintiffs have demonstrated a prima facie case, the first contention of Westinghouse on appeal is that the district court applied an incorrect standard to defendant's burden in response to the prima facie case. The burden placed on the employer to meet plaintiffs' prima facie case under the *McDonnell Douglas* analysis was further explained in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), and *Board of Trustees v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). In *Furnco,* the Court stated:

When the prima facie case is understood in the light of the opinion in *McDonnell Douglas,* it is apparent that the burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race. * * * To dispel the adverse inference from a prima facie showing under *McDonnell Douglas,* the employer need only "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* supra, 411 U.S., at 802, [93 S.Ct. at 1824].

*Furnco Construction Corp. v. Waters, supra,* 438 U.S. at 577–78, 98 S.Ct. at 2950. The Court further defined "articulating some legitimate, nondiscriminatory reason" in *Sweeney.* In that case the court of appeals had stated *McDonnell Douglas* required defendant *to prove absence of discriminatory motive.* The Supreme Court vacated and remanded for reconsideration in light of *Furnco,* noting that "articulating some legitimate, nondiscriminatory reason" did not require proof of the absence of discriminatory motive.

Westinghouse contends that there is language in the district court opinion which is similar to that disapproved in *Sweeney.* The district court at one point stated it was "not persuaded that the defendant has borne its burden of proving that this disqualification was not motivated in substantial part by racial reasons." *Vaughn v. Westinghouse Electric Corp., supra,* 471 F.Supp. at 289–90. The court also concluded:

In short, this is a case where the *McDonnell Douglas* rules as to burden of proof are dispositive. Defendant's position is by no means without support, but it has simply failed to persuade this Court that its proof is sufficient to overcome plaintiff's prima facie case with respect to Ms. Vaughn's disqualification.

*Id.* at 290.

The district court articulated the correct standard at one point in its opinion,[2] and

2. "Under *McDonnell Douglas,* the burden then shifts to the defendant to show that the personnel actions taken were based upon some legitimate, nondiscriminatory reason." *Vaughn v.*

clearly the standard it applied differs from that prohibited in *Sweeney.* Nevertheless we believe it could be interpreted as contrary to the teachings of that opinion. We are persuaded, however, that any doubt about whether the district court applied the appropriate test was resolved in its unpublished order of May 23, 1979. That order denied a motion by Westinghouse for amended findings of fact and conclusions of law and clarified the test the court had applied:

> This Court's opinion of May 9, 1979, did not place upon defendant the burden of showing that its reason for disqualifying the plaintiff Vaughn was not pretextual. The opinion is therefore fully obedient to the teaching of *Board of Trustees of Keene State College v. Sweeney,* [439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978)]. Defendant simply failed to articulate a legitimate, nondiscriminatory reason for Ms. Vaughn's disqualification.

*Vaughn v. Westinghouse Electric Corp.,* No. LR–74–C–215 (E.D.Ark., May 23, 1979) (order). This clearly is an application of the proper test.

The issue now before us is whether the district court's conclusion that Westinghouse failed to articulate a legitimate, nondiscriminatory reason for Vaughn's disqualification is clearly erroneous.

Westinghouse states its legitimate reason for disqualifying Vaughn was "her immediate supervisor's evaluation over a thirty day period that her poor productivity, excessive material waste, and her expressed dislike of a sealex operator's job rendered her unqualified to continue in the position." [3]

We equate the requirement of "articulating a legitimate, nondiscriminatory reason" with "proving the employment decision is based on a legitimate consideration." *Furnco* uses these phrases interchangeably, and the Court in *Sweeney* stated "words such as 'articulate,' 'show,' and 'prove,' may have more or less similar meanings depending upon the context in which they are used." *Board of Trustees v. Sweeney, supra,* 439 U.S. at 25, 99 S.Ct. at 295.

■ Therefore, while the burden of persuasion for demonstrating discrimination remains with the employee, the burden of producing evidence of a legitimate reason for the employment practice shifts to the employer. The employer bears the burden of showing by a preponderance of the evidence that the legitimate reason exists factually. *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1255–56 (5th Cir. 1977). *Accord Silberhorn v. General Iron Works Co.,* 584 F.2d 970 (10th Cir. 1978); *Jones v. Texas Air National Guard,* 584 F.2d 104 (5th Cir. 1978); *Whiteside v. Gill,* 580 F.2d 134 (5th Cir. 1978). These cases do not alter the fact that the ultimate burden of persuasion remains with Vaughn and simply requires Westinghouse to prove the legitimacy of its articulated reason by a preponderance of the evidence. *See generally Franks v. Bowman Transportation Co.,* 424 U.S. 747, 772, 96 S.Ct. 1251, 1267, 47 L.Ed.2d 444 (1976); *Lombard v. School District,* 463 F.Supp. 566, 571 (W.D.Pa.1978). *Cf. Furnco Construction Co. v. Waters, supra,* 438 U.S. at 578, 98 S.Ct. at 2950 (stating the burden on the employer is to demonstrate "proof of a justification which is reasonably related to the achievement of some legitimate goal"). Clearly this is obedient to *Sweeney* and does not require proof of the absence of discriminatory motive. *Board of Trustees v. Sweeney, supra,* 439 U.S. at 25, 99 S.Ct. at 296.

■ The district court concluded that Westinghouse had not articulated a legitimate reason for the disqualification. It noted the stated reason was poor produc-

*Westinghouse Elec. Corp.,* 471 F.Supp. 281, 286 (E.D.Ark.1979).

3. Brief of appellant at 24. This is similar to the reasons stated in Turnage's note of the April 19, 1971, meeting between Turnage and Vaughn. The note states Vaughn was disqualified "due to her obvious dislike for her job, the number of operator burned wires and the fact they were no better after repeated talks and warnings, and her production which had been unsatisfactory and getting no better."

tion, but observed a company form dated January 18, 1971, and signed by both Vaughn and her supervisor, Brazil, indicated satisfactory performance on the second shift, and a bump sheet dated December 8, 1978, indicated prior satisfactory performance during the second and third shifts as a sealex operator. The district court found her to be cooperative and not a discipline problem and noted she received increases in pay as a sealex operator and in fact was being paid the top rate at the time of her disqualification. Vaughn also contested the testimony that she had been made aware of the gravity of her production problems. Turnage stated both production quantity and quality were poor, and below other shifts, but the company had not articulated objective standards indicating what satisfactory production levels were. The district court concluded that although Vaughn "unquestionably had problems with production, * * * the absence of objective production criteria makes it difficult for the Court to hold these problems were serious enough to meet the burden imposed on the defendant by law." *Vaughn v. Westinghouse Electric Corp., supra,* 471 F.Supp. at 290.

We interpret the district court's decision, as clarified by its May 23, 1979, order, to state that although reasons were articulated, *i. e.*, poor production, given the opposing evidence concerning production and the absence of objective production criteria, Westinghouse failed to demonstrate the legitimacy of its articulated reason by a preponderance. *See Cosby v. United States,* 472 F.Supp. 547, 552–53 (S.D.Ohio 1979). "[A]ffirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 343 n.24, 97 S.Ct. 1843, 1858, 52 L.Ed.2d 396 (1977) (quoting *Alexander v. Louisiana,* 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972)).

While in viewing the evidence from the trial we might be of the opinion that Westinghouse articulated a legitimate reason for Vaughn's disqualification, we may not substitute our views for that of the district court. Fed.R.Civ.P. 52(a) provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Applying the standard, we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Because the district court concluded Westinghouse failed to meet its burden of production, Vaughn was not required to show that the reasons were pretextual.[4] If the employer cannot "prov[e] that he based his employment decision on a legitimate consideration," then he has failed "[t]o dispel the adverse influence from a prima facie case showing under *McDonnell Douglas.*" *Furnco Construction Co. v. Waters, supra,* 438 U.S. at 577–78, 98 S.Ct. at 2950.

4. It should be noted that, if required, much of the evidence used by the district court in finding a prima facie case might go to whether the employer's articulated reason is pretextual. *McDonnell Douglas* states the statistical evidence submitted by plaintiffs is helpful in showing pretext. So would testimony of Vaughn and others relating to individual instances of discrimination. Thus the district court in the present case alternatively could have found the reasons articulated by Westinghouse to be legitimate and nondiscriminatory, but, based on the statistical evidence, testimony, and lack of objective production standards, the reasons to be a pretext for discrimination. As noted by the Third Circuit,

> [T]here are no hard and fast rules as to what evidence must be considered as constituting a prima facie case and what evidence is needed in order to establish a pretext. Most importantly, the ultimate burden of persuading the factfinder that there has been illegal discrimination resides always with the plaintiff. We will thus review the judgment of the district court not with an eye to strict adherence to form, but in order to determine whether the decision on the merits of plaintiff's case is clearly erroneous on the facts, or uncongenial to previously enunciated legal standards.

*Whack v. Peabody & Wind Engineering Co.,* 595 F.2d 190, 193 (3d Cir. 1979) (footnotes omitted).

The district court's judgment that Vaughn was unlawfully disqualified from her job as sealex machine operator is affirmed.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

I view the district court's finding that Westinghouse failed to demonstrate the legitimacy of its articulated reason for disqualifying Vaughn to be clearly erroneous in light of the evidence produced at trial, and I respectfully dissent. The evidence clearly demonstrates that Westinghouse met its burden of showing by a preponderance of the evidence that a legitimate reason for the disqualification existed.

In the district court, Vaughn claimed that she was disqualified from the sealex position, declared surplus from other jobs, denied promotional opportunities, issued a written warning for being repeatedly late for work, and verbally abused and harassed by her supervisors, all on account of her race. With regard to these claims the district court found:

> With the exception of her disqualification as a sealex operator, all of Ms. Vaughn's changes in jobs were occasioned either by her own request or by a bona fide reduction in force, having the result under Westinghouse's legal seniority system of "bumping" her to another job. In addition, there were attendance problems with Ms. Vaughn which are amply documented in the company's records. There is no evidence that she was verbally abused or harassed, on account of race or for any other reason. With respect to these claims, the Court holds that the defendant has borne its burden.
>
> The result is otherwise, however, with regard to Ms. Vaughn's claim that she was disqualified as a sealex operator on account of her race. * * * As noted above, on January 25, 1971, she was transferred from second to third shift because of a reduction in force. She had been a sealex operator on second shift under O. D. Brazil, and transferred to the same job on third shift under C. T. Turnage. *Mr. Brazil's employee evaluation form with regard to Ms. Vaughn, dated January 20, 1971, states that her quality and quantity of work were poor and that she could not make production.* Mr. Brazil also stated that he would not rehire Ms. Vaughn. On the other hand, she got along well with others, and Mr. Brazil had no supervisory problems with her. *Most important of all, a form dated January 18, 1971, signed by both Ms. Vaughn and Mr. Brazil, stated that she had had "previous satisfactory experience" as a sealex machine operator on the second shift.* The Court must conclude that, although Mr. Brazil had some problems with her, he did not consider them serious enough to label her work "unsatisfactory." She then began work under Mr. Turnage's jurisdiction. On March 9, 23, 24, and 30, and on April 15, 1971, Mr. Turnage warned Ms. Vaughn about production problems, including what he believed to be too many burned wires. Finally, on April 19, 1971, Mr. Turnage disqualified her, stating that although she got along well with others, he had been unable to motivate her, and believed she had no interest in the job of sealex machine operator. Her disqualification form stated that she would not be eligible to hold this job in the future.

*Vaughn v. Westinghouse Electric Corp.*, 471 F.Supp. 281, 289 (E.D.Ark.1979) (emphasis added).

A review of these findings reveals only one major fact that may dispute Westinghouse's assertions that Vaughn was disqualified for production problems.[1] Vaughn and one of her supervisors, Brazil, signed a form on January 18, 1971, stating that Vaughn had "previous satisfactory experience" as a sealex machine operator during the second shift (3:00 p.m. to 11:00 p.m.). The district court, however, also found that Brazil did have problems with Vaughn, as

1. The district court also noted the existence of a "bump sheet" dated December 8, 1975, representing the state of the company's records as of January 1, 1979, that indicated that Vaughn had previously performed the sealex machine operator's job satisfactorily. 471 F.Supp. at 290. Westinghouse produced testimony stating that this report was a clerical error.

was evidenced by his employee evaluation of her, which he made two days *after* the form was signed. Brazil's evaluation found Vaughn's quality and quantity of work poor and stated that "she could not make production." After Vaughn's legitimate transfer to the "graveyard" shift (11:00 p.m. to 7:00 a.m.), her new supervisor, Turnage, experienced similar production problems. Three months later, Turnage, after warning Vaughn, disqualified her from the sealex position. Vaughn was not dismissed, however, by Westinghouse. She was transferred to a job of bulb loading which paid twenty-four cents less an hour than the sealex position. These facts are devoid of any connotation whatsoever of racial discrimination. The only discrimination against Vaughn was because of her poor and sloppy work. The Civil Rights Act of 1964 is not thought to have been passed to preserve sinecures for people, regardless of their race, who do not want to perform reasonably satisfactory work. Vaughn's productivity record was the worst of any of the operators. The Act here is being utilized as a shield to protect and reward substandard performance.

These facts, even when viewed in a light most favorable to Vaughn, only demonstrate that the supervisor, Turnage, may have had a higher production standard for his shift employees than did Vaughn's previous supervisor, Brazil. Turnage and Westinghouse had a legitimate, nondiscriminatory reason for disqualifying Vaughn unless a uniform production standard among shifts or supervisors is a prerequisite to a legitimate disqualification.[2] I do not believe that Title VII of the Civil Rights Act of 1964 ever envisaged requiring uniform production standards or mandating how businesses should produce their products. This requirement would result in government supervision of each and every stage of the production process.[3] In addition, the paperwork involved in developing and maintaining objective production standards would be titanic. Perhaps this would be yet another contributing factor in the comparatively low productivity suffered by our country in recent years.

I would reverse and remand to the district court in order to afford Vaughn an opportunity to show that Westinghouse's reason for disqualification is a pretext for illegal discrimination.

2. The application of such a prerequisite was suggested in the district court's opinion. "She [Vaughn] unquestionably had problems with production, but the absence of objective production criteria makes it difficult for the Court to hold that these problems were serious enough to meet the burden imposed on the defendant by law." 471 F.Supp. at 290.

3. A number of interesting questions arise if such a requirement were imposed. Should a uniform requirement be applied to all workers on a particular shift, or among shifts, or among plants? Note that if a uniform requirement were imposed on a particular shift, Vaughn would have to have been disqualified by Brazil ("she could not make production"); if she were not, any other employee who could make out a prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), could prevail in a civil rights action against Westinghouse since Westinghouse would be unable to rebut the prima facie case.