**Christine VAUGHN, Plaintiff,**

**v.**

**WESTINGHOUSE ELECTRIC CORP., Defendant.**

**No. LR–C–74–215.**

United States District Court,
E. D. Arkansas, W. D.

Sept. 30, 1981.

John Walker, Zimmery Crutcher, Jr., Little Rock, Ark., for plaintiff.

James Moore, A. Tucker Raney, Walter Paulson, Friday, Eldredge & Clark, Little Rock, Ark., for defendant.

## OPINION ON REMAND

ARNOLD, Circuit Judge, Sitting by Designation.

When this case was first before the Court, the defendant Westinghouse was found to have unlawfully disqualified the plaintiff Christine Vaughn from her job as a sealex operator at defendant's Little Rock light-bulb plant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Vaughn v. Westinghouse Electric Corp.*, 471 F.Supp. 281 (E.D.Ark. 1979). In an unpublished [1] order this Court explained the rationale for its holding:

> Defendant simply failed to articulate a legitimate, nondiscriminatory reason for Ms. Vaughn's disqualification.

*Vaughn v. Westinghouse Electric Corp.*, No. LR–C–74–215 (E.D.Ark., order filed May 23, 1979).

On defendant's appeal the judgment was affirmed. 620 F.2d 655 (8th Cir. 1980). The Court of Appeals, one judge dissenting, held (1) that this Court had not "misapplied the appropriate burden of proof standards," *id.* at 656, and (2) that this Court's findings of fact were not clearly erroneous, *id.* at 656, 660. Defendant then petitioned for review in the Supreme Court. On March 9, 1981, the Supreme Court granted defendant's petition for certiorari, summarily vacated the judgment of the Court of Appeals, and remanded the cause to that Court "for further consideration in light of *Texas Department of Community Affairs v. Burdine,*" 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which had been decided five days earlier. *Westinghouse Electric Corp. v. Vaughn*, 450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 (1981). The Court of Appeals in turn remanded the cause to this Court with directions to reconsider it in light of *Burdine*. *Vaughn v. Westinghouse Electric Corp.*, 646 F.2d 335 (8th Cir. 1981). Thereafter, this Court held an in-chambers conference with counsel. It was agreed that no new evidence was necessary, and that each side would brief two issues: (1) whether, in light of *Burdine*, this Court erred in its initial holding that defendant had failed to meet its second-stage burden of articulating a legitimate, nondiscriminatory reason for disqualifying plaintiff from her job; and (2) whether, if defendant did in fact meet this second-stage burden of production, plaintiff should nevertheless recover because she has, on the whole case, met her burden of persuading the Court by a preponderance of the evidence that her disqualification was motivated at least in part by her race. Briefing was completed on July 21, 1981. I have now read the relevant portions of the transcript, and the case is ready for decision.

### I.

■ The first of the two questions presented may be disposed of without elab-

---

1. The text of the relevant portion of the order may be found in *Vaughn v. Westinghouse Electric Corp.*, 620 F.2d 655, 659 (8th Cir. 1980), the opinion of the Court of Appeals affirming this Court's initial decision.

orate discussion. *Burdine* holds that the defendant's burden, once plaintiff makes a prima facie case, is one of production only, not of persuasion. Defendant need only introduce admissible evidence, legally sufficient (if believed) to justify a judgment in its favor, that the reasons for its personnel action were legitimate and nondiscriminatory. Although "the defendant's explanation of its legitimate reasons must be clear and reasonably specific," 101 S.Ct. at 1096, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 1094 (footnote omitted). Here, defendant introduced evidence, which was admitted without objection, that it disqualified plaintiff because she had too many burned wires. This asserted reason is legitimate and nondiscriminatory. It was error for this Court to require defendant to show by a preponderance of the evidence that it was in fact motivated by plaintiff's poor job performance. See 471 F.Supp. at 286, 289–90.[2] And although this Court thought at the time that the verbs "show," "prove," and "articulate" were roughly interchangeable, the Supreme Court has now unmistakably held otherwise. Plaintiff now concedes as much in her brief. The Court therefore now holds that defendant did articulate a legitimate, nondiscriminatory reason for disqualifying plaintiff as a sealex operator.

## II.

Defendant argues, in an excellent brief, that plaintiff has failed to carry her burden of persuasion on the whole case. It is forcefully pointed out that plaintiff's problems with making production were well-documented; that Clint Turnage, her supervisor at the time of the disqualification, warned her several times that her performance would have to improve; and that the white woman who replaced her at the sealex machine was entitled to the job by virtue of seniority. In addition, defendant correctly states that there was virtually no direct evidence of unlawful motivation on the part of Mr. Turnage, and that no proof was offered to the effect that a white person with a work record comparable to Ms. Vaughn's was kept on the job. If the issue were narrowly confined to evidence bearing directly on the decision to disqualify the plaintiff, there is no question that defendant would prevail.

The Court believes itself obliged, however, to consider the whole record, including those portions of the evidence that may throw indirect light on defendant's conduct. The Court is not called upon to express a generalized judgment about Westinghouse's employment policies. This is only an individual action challenging a single employee's disqualification and transfer to a lesser-paying job. But circumstantial evidence of intent, as well as direct, is relevant and can be persuasive. Direct evidence of discrimination is rare. An individual personnel action can usually be properly judged only if it is placed in the broader context of defendant's actions over a substantial period of time.

This Court's prior opinion described this context in some detail. 471 F.Supp. at 283–86. There is no need to repeat this discussion here. The findings previously made have been upheld by the Court of Appeals.[3]

**2.** Compare *Burdine v. Texas Department of Community Affairs*, 647 F.2d 513 (5th Cir. 1981) (on remand, judgment for defendant affirmed; trial court had found no discrimination).

**3.** This Court's prior opinion did not reach the issue of pretext, and neither did the Court of Appeals. But that Court did make the following significant comment:

It should be noted that, if required, much of the evidence used by the district court in finding a prima facie case might go to whether the employer's articulated reason is pre-

textual. *McDonnell Douglas* states the statistical evidence submitted by plaintiffs is helpful in showing pretext. So would testimony of Vaughn and others relating to individual instances of discrimination. Thus the district court in the present case alternatively could have found the reasons articulated by Westinghouse to be legitimate and nondiscriminatory, but based on the statistical evidence, testimony, and lack of objective production standards, the reasons to be a pretext for discrimination.
620 F.2d at 660 n.4.

They are now reaffirmed by this Court. In addition, it is important to note that almost all of defendant's supervisors, including the two men under whom plaintiff worked as a sealex operator, are and have been white; that most of the labor-grade-four sealex operators in 1971, when plaintiff was disqualified, were white (Tr. 15); that "[b]asically all" the labor-grade-one bulb loaders (the lower-paying job to which plaintiff was demoted) were black (Tr. 17); that plaintiff, according to a memorandum dated January 18, 1971, performed satisfactorily on the sealex machine while working under O. D. Brazil, before her transfer to Mr. Turnage's shift; and that plaintiff had progressively been given pay increases, until, several months before her disqualification, she had reached the top rate of pay available for that work. The Court does not doubt that the burnt wires documented by defendant in fact existed, or that production problems were a genuine concern. It seems likely, in fact, that plaintiff's job performance did leave something to be desired, and that defendant was in part legitimately motivated in disqualifying her.

■ The question in the case, however, is whether race played *any* substantial part in defendant's decision-making. To decide what motivated someone ten years ago is not an easy task. But on balance the Court is persuaded that plaintiff's race was more likely than not one of the factors that contributed substantially to defendant's decision. If defendant had set a numerical standard of production, communicated it to its employees, and enforced it uniformly, the result might well be otherwise. It did not do so.[4] Turnage did act objectively in

the sense of counting and documenting the number of plaintiff's burnt wires, but he never communicated to her any fixed number that she could not exceed (Tr. 655), nor did he testify as to what that number might have been.[5] The Court finds that plaintiff was disqualified in part because of her race. Defendant's conduct was therefore a violation of Title VII.

### III.

■ Before final judgment can be entered, the Court must decide what elements of relief are appropriate. When this case was before the Court the first time, plaintiff was awarded $1,696.25, representing back pay up to and including May 30, 1979. 471 F.Supp. at 292. This figure must be brought up to date. In addition, the Court at that time declined to order defendant to reinstate plaintiff as a sealex operator immediately, but rather ordered it to allow her to bid on the next available position. It seems that the same measure of relief remains appropriate. In one respect, a change should be made in the form of order previously entered. Paragraph 5 of the judgment enjoined defendant generally from any racial discrimination in employment. The injunction was not limited to disqualifications, or to any particular plant or group of employees. The Court now believes that this order was too broad. This case began as a class action with three named plaintiffs. Class certification was denied, and two of the plaintiffs' complaints were dismissed in their entirety. The third plaintiff, Ms. Vaughn, has prevailed on only one claim of discrimination out of five suggested. See 471 F.Supp. at 288. This claim

4. Defendant argues that the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 798, 803, 93 S.Ct. 1817, 1822, 1824, 36 L.Ed.2d 668 (1973), generally disapproved the distinction between objective and subjective criteria. I do not so read the case. Many employment decisions must be at least partly subjective, and the absence of objective criteria cannot be legally dispositive. But it is one factor to be considered, especially in a production-line situation where employee performance not only can be, but is, quantitatively measured. See *Taylor v. Teletype Corp.*, 648

F.2d 1129, 1135 (8th Cir. 1981) (trial court properly "took into consideration the subjective decisionmaking of the Company"), *pet'n for cert. filed*, 50 U.S.L.Week 3176 (U.S. Sept. 14, 1981) (No. 81–512).

5. I have read and re-read Mr. Turnage's testimony. (Tr. 648–70). There is no reason to disbelieve any of it. But at no time did he testify that Ms. Vaughn's race was not a factor in his decision. The omission is unique in Title VII litigation in which I have been involved, so far as I can now recall.

involved an isolated instance of discrimination that took place ten years ago. In a situation somewhat similar, but involving a defendant which had been found to have discriminated in four different instances, instead of only one, the Court of Appeals indicated "serious doubt as to the appropriateness of this kind of relief." *Taylor v. Teletype Corp., supra,* 648 F.2d at 1136, *vacating on this point* 478 F.Supp. 1227, 1228 (E.D.Ark.1979). This Court is therefore not disposed to award permanent, broad-ranging injunctive relief against Westinghouse.

█ Because plaintiff has prevailed on one of her claims, she is entitled, in the Court's discretion, to an award of attorneys' fees.[6] There is no reason not to make such an award. Its amount will of course need to be determined.

Plaintiff is directed to file, on or before October 15, 1981, a memorandum, supported by affidavit, setting forth her position as to the appropriate amount of back pay and attorneys' fees. Defendant may have until October 30, 1981, to reply. Entry of judgment will be withheld until all questions of relief are resolved.

---

6. While this case was pending on petition for certiorari, plaintiff filed a motion for a fee award. I recused myself, because the motion depended in part on an issue of timeliness, which in turn involved the credibility of one of counsel for plaintiff versus that of one of my law clerks. When certiorari was granted and the judgment in favor of plaintiff vacated, this particular question became moot, and there was no longer any reason for my disqualification.