**Christine VAUGHN and Marian Gee, Appellees,**

v.

**WESTINGHOUSE ELECTRIC CORP., Appellant.**

**No. 82–1123.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1982.

Decided March 11, 1983.

Fagg, Circuit Judge, filed a dissenting opinion.

Friday, Eldredge & Clark by James W. Moore, Walter A. Paulson, II, Little Rock, Ark., for appellant Westinghouse Elec. Corp.

Zimmery Crutcher, Jr., Mays, Crutcher & Brown, John Walker, Little Rock, Ark., Jack Greenberg, Clyde E. Murphy, New York City, for appellees.

*The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

Before ROSS and FAGG, Circuit Judges, and SCHATZ, District Judge.*

ROSS, Circuit Judge.

This case is before this court for the second time on an appeal by the defendant Westinghouse from a decision by Judge Arnold, sitting by designation, again finding Westinghouse liable for a violation of Title VII of the Civil Rights Act of 1964. In the initial proceeding before the trial court, appellee Vaughn prevailed on her claim that she was disqualified as a sealex machine operator because of her race. *Vaughn v. Westinghouse Electric Corp.*, 471 F.Supp. 281 (E.D.Ark.1979). Westinghouse appealed to this court alleging that the district court misapplied the burden of proof, and that the factual findings were clearly erroneous. This court affirmed the judgment of the trial court. *Vaughn v. Westinghouse Electric Corp.*, 620 F.2d 655 (8th Cir.1980). On March 9, 1981, the Supreme Court, 450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 granted defendant's petition for certiorari, summarily vacated the judgment, and remanded the case to this court for further consideration in light of *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This court then remanded to the trial court with directions to reconsider in light of *Burdine*. On remand, the trial court held that it erred on the *Burdine* issue but held that, after reviewing the record as a whole, it reaffirmed its finding that Vaughn was disqualified from her job in substantial part because of her race. On appeal Westinghouse alleges that the district court erred in finding that its legitimate nondiscriminatory reason for disqualifying Vaughn was pretextual. We affirm.

Christine Vaughn, a black woman, was hired by Westinghouse on July 13, 1970, as a sealex machine operator, labor-grade-four, at $2.20 per hour. On November 16, 1970, she was transferred to a second shift

position under the supervision of O.D. Brazil and was earning $2.54 per hour. On January 25, 1971, she was transferred to the third shift due to a reduction in force. She continued as a sealex operator under the supervision of C.T. Turnage and was earning the top wage rate of $2.69 per hour. On April 19, 1971, she was disqualified as a sealex operator by Turnage and placed on an open labor-grade-one job of bulb-loader earning $2.45 per hour.

At the time Vaughn was transferred from the second shift to the third shift, Brazil, as her supervisor, was required to complete an employee evaluation form concerning Vaughn's job performance. At trial, however, *two* forms were found in Vaughn's personnel file. One form was dated January 20, 1971, and stated that the quality and quantity of production were poor, that he would not rehire her for that reason, and that she got along well with others including her supervisors. The second form was dated January 18, 1971, and stated that Vaughn had had previous satisfactory experience as a sealex machine operator under Brazil on the second shift. From these forms, the district court concluded that Vaughn's work under Brazil presented some problems, but not serious enough to label her performance unsatisfactory.

Under Turnage's supervision on the third shift, Vaughn was verbally warned on five occasions that she was having production problems. Turnage made notes of these verbal warnings which were introduced at trial. On April 19, 1971, Vaughn was disqualified from her job as sealex operator. Vaughn disputed that she had any prior warnings of this action, and testified that she felt she was disqualified under orders from the front office for unknown reasons.

The district court held that Vaughn had established a prima facie case of racial discrimination under the rationale of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court then held that Westinghouse articulated a legitimate nondiscriminatory reason for Vaughn's disqualification: poor produc-tion. However, the court found that the proffered reason was pretextual after considering the record as a whole. In its finding of pretext, the district court focused on the following facts: almost all supervisors at Westinghouse are and have been white; most of the labor-grade-four sealex operators in 1971 were white; basically all labor-grade-one bulb-loaders were black; plaintiff Vaughn, according to Brazil, performed satisfactorily on the sealex machine before her transfer to third shift; and that Vaughn had progressively been given pay increases, until, several months before her disqualification, she had reached the top rate of pay available for a sealex operator. The court then held that even though Vaughn had some production problems, it felt that her disqualification was motivated in substantial part by her race.

This is a close case and it may well be that the panel, if sitting as the trial judge, might have found that Westinghouse's proffered reason for plaintiff's disqualification was not pretextual. However, we may not substitute our views for that of the district court unless we are able to say that the findings of fact in this case are clearly erroneous as is required by Fed.R. Civ.P. 52(a). The factual findings of the district court should not be overturned unless the reviewing court is left with the definite conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). We cannot say, after a review of the record, that we are left with a definite conviction that a mistake was committed in the district court's findings of fact. Accordingly, the district court's judgment that Vaughn was unlawfully disqualified from her job as a sealex operator is affirmed.

FAGG, Circuit Judge, dissenting.

I respectfully dissent. I agree with the majority that Vaughn established a prima facie case and that Westinghouse articulated a legitimate, nondiscriminatory reason for Vaughn's disqualification. However, I disagree that the evidence in the record demonstrates that Vaughn met her burden

of proving by a preponderance of the evidence that Westinghouse's reason was a pretext for discrimination. *See Texas Department of Community Affairs v. Burdine, supra,* 450 U.S. at 252–53, 101 S.Ct. at 1090–91.

The following evidence supports the conclusion that Vaughn's disqualification was not the result of discrimination. The district court found that there was no evidence that Vaughn was verbally abused or harassed on account of her race or for any other reason. At the time of her disqualification, Vaughn was working the graveyard shift, 11:00 p.m. to 7:00 a.m., under the supervision of Turnage. Vaughn testified that Turnage gave her assistance to help her become a better sealex operator. Near the end of March, Vaughn communicated her dislike of her job to Turnage and said she wanted to bid off. Turnage explained that she could not bid off because she had not been on the job a sufficient length of time and he encouraged her to put more effort into the job she presently held. Turnage was unable to motivate her, he believed she had no interest in the job of sealex machine operator, and the district court found no reason to disbelieve any of his testimony.

Additionally, there is undisputed evidence of Vaughn's poor production. Her burnt wires causing waste were documented by Turnage. As a sealex operator, Vaughn's production was important because a sealex operator paces the production output of a group of six other employees. Turnage warned Vaughn on five separate occasions from March 9, 1971, to April 15, 1971, about her production problems. He discussed with her the fact that her rate of burnt wires was much higher than that of the other sealex operators. Turnage testified that after the warnings Vaughn would have short periods of improvement but that there was no overall improvement.

Turnage disqualified Vaughn on April 19, 1971. At that time he told Vaughn, in the presence of the union shop steward, that her disqualification was due to her obvious dislike for her job, her high number of burnt wires, and her failure to improve her production to a satisfactory level after repeated talks and warnings. Turnage was a supervisor for Westinghouse for four years. During that entire time he disqualified or failed to qualify only three employees, Vaughn and two white males. The record contains no evidence that Turnage was aware of Brazil's prior reports or that he had conferred with Brazil about Vaughn's work performance. Under the record the finding is inescapable that Turnage's disqualification decision was based on Vaughn's performance on the graveyard shift and was not influenced by Brazil's impression of Vaughn's ability.

The focus of this case is on the graveyard shift and the evidence is one-sided in favor of Westinghouse: Turnage was an objective supervisor; Turnage counted her burnt wires and told her to reduce her waste, but her performance did not improve; Vaughn did not complain that Turnage's production expectations were unreasonable; Vaughn had no complaints with Turnage's administration of the graveyard shift and she did not contend that his criticism of her work was laced with racial overtones; moreover, no proof was offered that a white employee with a work record comparable to Vaughn's was kept on the job. Although the district court noted that Westinghouse had not established production criteria; although Turnage was not asked specifically if Vaughn's race was a factor in his decision; although Vaughn may have been unhappy with the conduct of a supervisor on a different shift; and although Vaughn introduced general statistics; none of this evidence addresses the employment action in dispute. Based upon the record, I feel we are obliged to find that Vaughn disliked the late shift, she was underachieving on the sealex machine, and she was not motivated to improve upon an unsatisfactory performance notwithstanding the wasteful and costly consequences to her company.

In my view Vaughn failed to meet her burden of persuasion that a discriminatory reason was the basis for her disqualification and transfer to a lower paying job and the

district court's ruling to the contrary is clearly erroneous. When this case made its initial appearance before the court Judge Floyd R. Gibson filed a dissenting opinion that is equally applicable to the case as it now pends before the court:

> These facts are devoid of any connotation whatsoever of racial discrimination. The only discrimination against Vaughn was because of her poor and sloppy work. The Civil Rights Act of 1964 is not thought to have been passed to preserve sinecures for people, regardless of their race, who do not want to perform reasonably satisfactory work. Vaughn's productivity record was the worst of any of the operators. The Act here is being utilized as a shield to protect and reward substandard performance.

*Vaughn v. Westinghouse Electric Corp., supra,* 620 F.2d at 662 (Gibson, J., dissenting).

I would reverse.