# McDONNELL DOUGLAS CORP. *v.* GREEN

No. 72–490.  Argued March 28, 1973—Decided May 14, 1973

Powell, J., delivered the opinion for a unanimous Court.

*Veryl L. Riddle* argued the cause for petitioner. With him on the briefs were *R. H. McRoberts* and *Thomas C. Walsh.*

*Louis Gilden* argued the cause for respondent. With him on the brief were *Jack Greenberg, James M. Nabrit III, William L. Robinson,* and *Albert Rosenthal.**

Mr. Justice Powell delivered the opinion of the Court.

The case before us raises significant questions as to the proper order and nature of proof in actions under Title

---

*Milton A. Smith* and *Lawrence M. Cohen* filed a brief for the Chamber of Commerce of the United States as *amicus curiae* urging reversal.

*Solicitor General Griswold, Assistant Attorney General Pottinger, Deputy Solicitor General Wallace, Keith A. Jones, David L. Rose, Julia P. Cooper,* and *Beatrice Rosenberg* filed a brief for the United States as *amicus curiae* urging affirmance.

VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U. S. C. § 2000e *et seq.*

Petitioner, McDonnell Douglas Corp., is an aerospace and aircraft manufacturer headquartered in St. Louis, Missouri, where it employs over 30,000 people. Respondent, a black citizen of St. Louis, worked for petitioner as a mechanic and laboratory technician from 1956 until August 28, 1964 [1] when he was laid off in the course of a general reduction in petitioner's work force.

Respondent, a long-time activist in the civil rights movement, protested vigorously that his discharge and the general hiring practices of petitioner were racially motivated.[2] As part of this protest, respondent and other members of the Congress on Racial Equality illegally stalled their cars on the main roads leading to petitioner's plant for the purpose of blocking access to it at the time of the morning shift change. The District Judge described the plan for, and respondent's participation in, the "stall-in" as follows:

> "[F]ive teams, each consisting of four cars would 'tie up' five main access roads into McDonnell at the time of the morning rush hour. The drivers of the cars were instructed to line up next to each other completely blocking the intersections or roads. The drivers were also instructed to stop their cars, turn off the engines, pull the emergency brake, raise all windows, lock the doors, and remain in their cars until the police arrived. The plan was to have the cars remain in position for one hour.

---

[1] His employment during these years was continuous except for 21 months of service in the military.

[2] The Court of Appeals noted that respondent then "filed formal complaints of discrimination with the President's Commission on Civil Rights, the Justice Department, the Department of the Navy, the Defense Department, and the Missouri Commission on Human Rights." 463 F. 2d 337, 339 (1972).

"Acting under the 'stall in' plan, plaintiff [respondent in the present action] drove his car onto Brown Road, a McDonnell access road, at approximately 7:00 a. m., at the start of the morning rush hour. Plaintiff was aware of the traffic problems that would result. He stopped his car with the intent to block traffic. The police arrived shortly and requested plaintiff to move his car. He refused to move his car voluntarily. Plaintiff's car was towed away by the police, and he was arrested for obstructing traffic. Plaintiff pleaded guilty to the charge of obstructing traffic and was fined." 318 F. Supp. 846, 849.

On July 2, 1965, a "lock-in" took place wherein a chain and padlock were placed on the front door of a building to prevent the occupants, certain of petitioner's employees, from leaving. Though respondent apparently knew beforehand of the "lock-in," the full extent of his involvement remains uncertain.[3]

---

[3] The "lock-in" occurred during a picketing demonstration by ACTION, a civil rights organization, at the entrance to a downtown office building which housed a part of petitioner's offices and in which certain of petitioner's employees were working at the time. A chain and padlock were placed on the front door of the building to prevent ingress and egress. Although respondent acknowledges that he was chairman of ACTION at the time, that the demonstration was planned and staged by his group, that he participated in and indeed was in charge of the picket line in front of the building, that he was told in advance by a member of ACTION "that he was planning to·chain the front door," and that he "approved of" chaining the door, there is no evidence that respondent personally took part in the actual "lock-in," and he was not arrested. App. 132–133.

The Court of Appeals majority, however, found that the record did "not support the trial court's conclusion that Green 'actively cooperated' in chaining the doors of the downtown St. Louis building during the 'lock-in' demonstration." 463 F. 2d, at 341. See also concurring opinion of Judge Lay. Id., at 345. Judge Johnsen, in

Some three weeks following the "lock-in," on July 25, 1965, petitioner publicly advertised for qualified mechanics, respondent's trade, and respondent promptly applied for re-employment. Petitioner turned down respondent, basing its rejection on respondent's participation in the "stall-in" and "lock-in." Shortly thereafter, respondent filed a formal complaint with the Equal Employment Opportunity Commission, claiming that petitioner had refused to rehire him because of his race and persistent involvement in the civil rights movement, in violation of §§ 703 (a)(1) and 704 (a) of the Civil Rights Act of 1964, 42 U. S. C. §§ 2000e–2 (a)(1) and 2000e–3 (a).[4] The former section generally prohibits racial discrimination in any employment decision while the latter forbids discrimination against applicants or employees for attempting to protest or correct allegedly discriminatory conditions of employment.

---

dissent, agreed with the District Court that the "chaining and padlocking [were] carried out as planned, [and that] Green had in fact given it . . . approval and authorization." *Id.*, at 348.

In view of respondent's admitted participation in the unlawful "stall-in," we find it unnecessary to resolve the contradictory contentions surrounding this "lock-in."

[4] Section 703 (a)(1) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–2 (a)(1), in pertinent part provides:

"It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

Section 704 (a) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–3 (a), in pertinent part provides:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."

The Commission made no finding on respondent's allegation of racial bias under § 703 (a)(1), but it did find reasonable cause to believe petitioner had violated § 704 (a) by refusing to rehire respondent because of his civil rights activity. After the Commission unsuccessfully attempted to conciliate the dispute, it advised respondent in March 1968, of his right to institute a civil action in federal court within 30 days.

On April 15, 1968, respondent brought the present action, claiming initially a violation of § 704 (a) and, in an amended complaint, a violation of § 703 (a)(1) as well.[5] The District Court dismissed the latter claim of racial discrimination in petitioner's hiring procedures on the ground that the Commission had failed to make a determination of reasonable cause to believe that a violation of that section had been committed. The District Court also found that petitioner's refusal to rehire respondent was based solely on his participation in the illegal demonstrations and not on his legitimate civil rights activities. The court concluded that nothing in Title VII or § 704 protected "such activity as employed by the plaintiff in the 'stall in' and 'lock in' demonstrations." 318 F. Supp., at 850.

On appeal, the Eighth Circuit affirmed that unlawful protests were not protected activities under § 704 (a),[6] but reversed the dismissal of respondent's § 703 (a)(1) claim relating to racially discriminatory hiring practices, holding that a prior Commission determination of reasonable cause was not a jurisdictional prerequisite to raising a claim under that section in federal court. The court

---

[5] Respondent also contested the legality of his 1964 discharge by petitioner, but both courts held this claim barred by the statute of limitations. Respondent does not challenge those rulings here.

[6] Respondent has not sought review of this issue.

ordered the case remanded for trial of respondent's claim under § 703 (a)(1).

In remanding, the Court of Appeals attempted to set forth standards to govern the consideration of respondent's claim. The majority noted that respondent had established a prima facie case of racial discrimination; that petitioner's refusal to rehire respondent rested on "subjective" criteria which carried little weight in rebutting charges of discrimination; that, though respondent's participation in the unlawful demonstrations might indicate a lack of a responsible attitude toward performing work for that employer, respondent should be given the opportunity to demonstrate that petitioner's reasons for refusing to rehire him were mere pretext.[7] In order to clarify the standards governing the disposition of an action challenging employment discrimination, we granted certiorari, 409 U. S. 1036 (1972).

## I

We agree with the Court of Appeals that absence of a Commission finding of reasonable cause cannot bar suit under an appropriate section of Title VII and that the District Judge erred in dismissing respondent's claim of racial discrimination under § 703 (a)(1). Respondent satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U. S. C. §§ 2000e-5 (a) and 2000e-5 (e). The Act does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause, and we will not engraft on the statute a requirement which may inhibit the review of

---

[7] All references here are to Part V of the revised opinion of the Court of Appeals, 463 F. 2d, at 352, which superseded Part V of the court's initial opinion with respect to the order and nature of proof.

claims of employment discrimination in the federal courts. The Commission itself does not consider the absence of a "reasonable cause" determination as providing employer immunity from similar charges in a federal court, 29 CFR § 1601.30, and the courts of appeal have held that, in view of the large volume of complaints before the Commission and the nonadversary character of many of its proceedings, "court actions under Title VII are de novo proceedings and . . . a Commission 'no reasonable cause' finding does not bar a lawsuit in the case." *Robinson* v. *Lorillard Corp.*, 444 F. 2d 791, 800 (CA4 1971); *Beverly* v. *Lone Star Lead Construction Corp.*, 437 F. 2d 1136 (CA5 1971); *Flowers* v. *Local 6, Laborers International Union of North America*, 431 F. 2d 205 (CA7 1970); *Fekete* v. *U. S. Steel Corp.*, 424 F. 2d 331 (CA3 1970).

Petitioner argues, as it did below, that respondent sustained no prejudice from the trial court's erroneous ruling because in fact the issue of racial discrimination in the refusal to re-employ "was tried thoroughly" in a trial lasting four days with "at least 80%" of the questions relating to the issue of "race." [8] Petitioner, therefore, requests that the judgment below be vacated and the cause remanded with instructions that the judgment of the District Court be affirmed.[9] We cannot agree that the dismissal of respondent's § 703 (a)(1) claim was harmless error. It is not clear that the District Court's findings as to respondent's § 704 (a) contentions involved the identical issues raised by his claim under § 703 (a)(1). The former section relates solely to discrimination against an applicant or employee on account of his participation in legitimate civil rights activities or protests, while the latter section deals with the broader and cen-

---

[8] Tr. of Oral Arg. 11.

[9] Brief for Petitioner 40.

trally important question under the Act of whether, for any reason, a racially discriminatory employment decision has been made. Moreover, respondent should have been accorded the right to prepare his case and plan the strategy of trial with the knowledge that the § 703 (a)(1) cause of action was properly before the District Court.[10] Accordingly, we remand the case for trial of respondent's claim of racial discrimination consistent with the views set forth below.

## II

The critical issue before us concerns the order and allocation of proof in a private, non-class action challenging employment discrimination. The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens. *Griggs* v. *Duke Power Co.*, 401 U. S. 424, 429 (1971); *Castro* v. *Beecher*, 459 F. 2d 725 (CA1 1972); *Chance* v. *Board of Examiners*, 458 F. 2d 1167 (CA2 1972); *Quarles* v. *Philip Morris, Inc.*, 279 F. Supp. 505 (ED Va. 1968). As noted in *Griggs, supra:*

"Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed.

---

[10] The trial court did not discuss respondent's § 703 (a)(1) claim in its opinion and denied requests for discovery of statistical materials which may have been relevant to that claim.

> What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Id.,* at 430–431.

There are societal as well as personal interests on both sides of this equation. The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions. In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise.

In this case respondent, the complainant below, charges that he was denied employment "because of his involvement in civil rights activities" and "because of his race and color." [11] Petitioner denied discrimination of any kind, asserting that its failure to re-employ respondent was based upon and justified by his participation in the unlawful conduct against it. Thus, the issue at the trial on remand is framed by those opposing factual contentions. The two opinions of the Court of Appeals and the several opinions of the three judges of that court attempted, with a notable lack of harmony, to state the applicable rules as to burden of proof and how this shifts upon the making of a prima facie case. [12] We now address this problem.

---

[11] The respondent initially charged petitioner in his complaint filed April 15, 1968, with discrimination because of his "involvement in civil rights activities." App. 8. In his amended complaint, filed March 20, 1969, plaintiff broadened his charge to include denial of employment because of race in violation of § 703 (a) (1). App. 27.

[12] See original opinion of the majority of the panel which heard the case, 463 F. 2d, at 338; the concurring opinion of Judge Lay, *id.,* at 344; the first opinion of Judge Johnsen, dissenting in part, *id.,* at 346;

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[13] In the instant case, we agree with the Court of Appeals that respondent proved a prima facie case. 463 F. 2d 337, 353. Petitioner sought mechanics, respondent's trade, and continued to do so after respondent's rejection. Petitioner, moreover, does not dispute respondent's qualifications[14] and acknowledges that his past work performance in petitioner's employ was "satisfactory."[15]

The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. We need not attempt in the instant case to detail every matter which fairly could be

the revised opinion of the majority, *id.*, at 352; and the supplemental dissent of Judge Johnsen, *id.*, at 353. A petition for rehearing en banc was denied by an evenly divided Court of Appeals.

[13] The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

[14] We note that the issue of what may properly be used to test qualifications for employment is not present in this case. Where employers have instituted employment tests and qualifications with an exclusionary effect on minority applicants, such requirements must be "shown to bear a demonstrable relationship to successful performance of the jobs" for which they were used, *Griggs* v. *Duke Power Co.*, 401 U. S. 424, 431 (1971). *Castro* v. *Beecher*, 459 F. 2d 725 (CA1 1972); *Chance* v. *Board of Examiners*, 458 F. 2d 1167 (CA2 1972).

[15] Tr. of Oral Arg. 3; 463 F. 2d, at 353.

recognized as a reasonable basis for a refusal to hire. Here petitioner has assigned respondent's participation in unlawful conduct against it as the cause for his rejection. We think that this suffices to discharge petitioner's burden of proof at this stage and to meet respondent's prima facie case of discrimination.

The Court of Appeals intimated, however, that petitioner's stated reason for refusing to rehire respondent was a "subjective" rather than objective criterion which "carr[ies] little weight in rebutting charges of discrimination," 463 F. 2d, at 352. This was among the statements which caused the dissenting judge to read the opinion as taking "the position that such unlawful acts as Green committed against McDonnell would not legally entitle McDonnell to refuse to hire him, even though no racial motivation was involved . . . ." *Id.*, at 355. Regardless of whether this was the intended import of the opinion, we think the court below seriously underestimated the rebuttal weight to which petitioner's reasons were entitled. Respondent admittedly had taken part in a carefully planned "stall-in," designed to tie up access to and egress from petitioner's plant at a peak traffic hour.[16] Nothing in Title VII compels an employer to absolve and rehire one who has engaged in such deliberate, unlawful activity against it.[17] In upholding, under the National Labor Relations Act, the discharge of employees who had seized and forcibly retained

---

[16] The trial judge noted that no personal injury or property damage resulted from the "stall-in" due "solely to the fact that law enforcement officials had obtained notice in advance of plaintiff's [here respondent's] demonstration and were at the scene to remove plaintiff's car from the highway." 318 F. Supp. 846, 851.

[17] The unlawful activity in this case was directed specifically against petitioner. We need not consider or decide here whether, or under what circumstances, unlawful activity not directed against the particular employer may be a legitimate justification for refusing to hire.

an employer's factory buildings in an illegal sit-down strike, the Court noted pertinently:

> "We are unable to conclude that Congress intended to compel employers to retain persons in their employ regardless of their unlawful conduct,—to invest those who go on strike with an immunity from discharge for acts of trespass or violence against the employer's property . . . . Apart from the question of the constitutional validity of an enactment of that sort, it is enough to say that such a legislative intention should be found in some definite and unmistakable expression." *NLRB* v. *Fansteel Corp.*, 306 U. S. 240, 255 (1939).

Petitioner's reason for rejection thus suffices to meet the prima facie case, but the inquiry must not end here. While Title VII does not, without more, compel rehiring of respondent, neither does it permit petitioner to use respondent's conduct as a pretext for the sort of discrimination prohibited by § 703 (a) (1). On remand, respondent must, as the Court of Appeals recognized, be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext. Especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness to the "stall-in" were nevertheless retained or rehired. Petitioner may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races.

Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment; petitioner's reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general policy and

practice with respect to minority employment.[18] On the latter point, statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks. *Jones* v. *Lee Way Motor Freight, Inc.,* 431 F. 2d 245 (CA10 1970); Blumrosen, Strangers in Paradise: *Griggs* v. *Duke Power Co.,* and the Concept of Employment Discrimination, 71 Mich. L. Rev. 59, 91–94 (1972).[19] In short, on the retrial respondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision.

The court below appeared to rely upon *Griggs* v. *Duke Power Co., supra,* in which the Court stated: "If an employment practice which operates to exclude Negroes can-

---

[18] We are aware that some of the above factors were, indeed, considered by the District Judge in finding under § 704 (a), that "defendant's [here petitioner's] reasons for refusing to rehire the plaintiff were motivated solely and simply by the plaintiff's participation in the 'stall in' and 'lock in' demonstrations." 318 F. Supp., at 850. We do not intimate that this finding must be overturned after consideration on remand of respondent's § 703 (a)(1) claim. We do, however, insist that respondent under § 703 (a)(1) must be given a full and fair opportunity to demonstrate by competent evidence that whatever the stated reasons for his rejection, the decision was in reality racially premised.

[19] The District Court may, for example, determine, after reasonable discovery that "the [racial] composition of defendant's labor force is itself reflective of restrictive or exclusionary practices." See Blumrosen, *supra,* at 92. We caution that such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to rehire. See generally *United States* v. *Bethlehem Steel Corp.,* 312 F. Supp. 977, 992 (WDNY 1970), order modified, 446 F. 2d 652 (CA2 1971). Blumrosen, *supra,* n. 19, at 93.

not be shown to be related to job performance, the practice is prohibited." 401 U. S., at 431.[20] But *Griggs* differs from the instant case in important respects. It dealt with standardized testing devices which, however neutral on their face, operated to exclude many blacks who were capable of performing effectively in the desired positions. *Griggs* was rightly concerned that childhood deficiencies in the education and background of minority citizens, resulting from forces beyond their control, not be allowed to work a cumulative and invidious burden on such citizens for the remainder of their lives. *Id.*, at 430. Respondent, however, appears in different clothing. He had engaged in a seriously disruptive act against the very one from whom he now seeks employment. And petitioner does not seek his exclusion on the basis of a testing device which overstates what is necessary for competent performance, or through some sweeping disqualification of all those with any past record of unlawful behavior, however remote, insubstantial, or unrelated to applicant's personal qualifications as an employee. Petitioner assertedly rejected respondent for unlawful conduct against it and, in the absence of proof of pretext or discriminatory application of such a reason, this cannot be thought the kind of "artificial, arbitrary, and unnecessary barriers to employment" which the Court found to be the intention of Congress to remove. *Id.*, at 431.[21]

---

[20] See 463 F. 2d, at 352.

[21] It is, of course, a predictive evaluation, resistant to empirical proof, whether "an applicant's past participation in unlawful conduct directed at his prospective employer might indicate the applicant's lack of a responsible attitude toward performing work for that employer." 463 F. 2d, at 353. But in this case, given the seriousness and harmful potential of respondent's participation in the "stall-in" and the accompanying inconvenience to other employees, it cannot be said that petitioner's refusal to employ lacked a rational and neutral business justification. As the Court has noted elsewhere: "Past conduct may well relate to present fitness; past loyalty may

## III

In sum, respondent should have been allowed to pursue his claim under § 703 (a)(1). If the evidence on retrial is substantially in accord with that before us in this case, we think that respondent carried his burden of establishing a prima facie case of racial discrimination and that petitioner successfully rebutted that case. But this does not end the matter. On retrial, respondent must be afforded a fair opportunity to demonstrate that petitioner's assigned reason for refusing to re-employ was a pretext or discriminatory in its application. If the District Judge so finds, he must order a prompt and appropriate remedy. In the absence of such a finding, petitioner's refusal to rehire must stand.

The judgment is vacated and the cause is hereby remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

have a reasonable relationship to present and future trust." *Garner* v. *Los Angeles Board,* 341 U. S. 716, 720 (1951).