816 F.2d 671
 44 Fair Empl.Prac.Cas. 448,
43 Empl. Prac. Dec. P 36,997
Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
OLD DOMINION SECURITY CORPORATION, Defendant-Appellant.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
OLD DOMINION SECURITY CORPORATION, Defendant-Appellee.
 Nos. 86-2120, 86-2156.
 United States Court of Appeals, Fourth Circuit.
 Argued March 3, 1987.
Decided April 14, 1987.
 
 Before RUSSELL and CHAPMAN, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 Oldrick J. Labell, for appellant.
 Gladys O. Collazo, Equal Employment Opportunity Commission (Johnny J. Butler, Acting General Counsel; Gwendolyn Young Reams, Associate General Counsel; Peggy R. Mastroianni, Acting Assistant General Counsel, on brief), for appellee.
 PER CURIAM:
 
 
 1
 This case concerns alleged violations of the Pregnancy Discrimination Act of 1978, 42 U.S.C. Sec. 2000e(k). Complainant Terry Williams was dismissed from her job as a security guard at the beginning of her ninth month of pregnancy and was not reinstated after the birth of her child. The Equal Employment Opportunity Commission (EEOC) determined there was reasonable cause to believe that Williams' employer Old Dominion Security Corporation (Old Dominion) had discriminatorily discharged Williams and discriminatorily refused to rehire her. The district court found in favor of the EEOC and awarded Williams back pay. Old Dominion now appeals its liability, and the EEOC cross-appeals the computation of the back pay award. We affirm on the issue of liability and remand for modification of the damages award.
 
 I.
 
 2
 Williams was hired by Old Dominion as a security guard on September 27, 1979. Old Dominion provided security guards under contracts with building owners or managers. At the time of this incident Williams was stationed at New Hope Towers, a rent-assisted high-rise apartment house owned by the United States Department of Housing and Urban Development. Her duties there included patrolling all floors of the building each hour, as well as patrolling the grounds, parking lot, and pool and cabana area. She monitored the security radio, wrote out incident reports, and logged in the names of visitors. All of the security guards there carried nightsticks but not guns; Williams also carried a can of mace. The guards were expected to deal with minor disturbances themselves, but to call the police for assistance if a serious problem arose. The guards had authority to make arrests, but only one arrest had ever been made at New Hope Towers and this occurred after Williams' discharge.
 
 
 3
 In May 1981 Williams informed her immediate supervisor, Lt. Rush, that she was pregnant and that the baby was due on November 26, 1981. In September 1981 Chief Capino, Old Dominion's operations manager, came to the job site. He suggested to Williams that she go home because she was pregnant and that she come back after she had the baby. Capino and Rush repeated this advice several times. Williams expressed her desire to continue working until her due date.
 
 
 4
 On October 31, 1981, Chief Blackman, Old Dominion's general manager, called Williams and instructed her not to report to work because of her pregnancy. He further told her that she could return to work after she delivered the baby. Williams interpreted this as a discharge and applied for unemployment compensation. On November 5, 1981, Old Dominion issued a formal notice of employment termination stating that Williams had been discharged because she could no longer perform her duties as security guard because of her pregnancy.
 
 
 5
 Williams delivered her baby on December 8, 1981. On February 4, 1982, she returned to Old Dominion to reclaim her job. She was informed by Judy Wright, Old Dominion's personnel coordinator, that she would have to reapply for a position. Williams did so, and there was conflicting testimony as to whether Williams placed any geographic or time-shift restrictions on her availability. There was also conflicting testimony as to whether Williams was ever offered a new position. It is undisputed, however, that Old Dominion was running newspaper advertisements for security guards at this time, and that Williams was not rehired despite her regular follow-up phone calls to Old Dominion and the prior evaluations that she was a good and reliable employee. In accordance with company policy, Williams' job application expired after three months.
 
 
 6
 On March 22, 1982, Williams filed a charge with the EEOC alleging discriminatory discharge. In May 1982 she amended the complaint to include discriminatory refusal to rehire. The EEOC was delayed in its investigation because Old Dominion refused to provide certain necessary information. This information was eventually obtained pursuant to a subpoena enforcement action. On September 13, 1984, the EEOC issued a determination of probable cause. The parties unsuccessfully sought conciliation. The EEOC then filed suit.
 
 
 7
 Meanwhile, Williams attempted to find other employment. She attended on-the-job training in both computer programing and clerical work, and held a few short-term temporary jobs. She became permanently disabled in June 1985 and ceased looking for employment.
 
 
 8
 The district court found in favor of the EEOC on both discriminatory discharge and discriminatory refusal to hire. It rejected both the EEOC's back pay net calculation of $28,637.36 (based on Williams' 1981 hourly rate for a 40-hour week, with provision for salary increases and promotions) and Old Dominion's net calculation of $17,188 (based on Williams' 1981 hourly rate but applied to an average work week of less than 40 hours and without promotions or wage increases). Instead, the court added together Williams' past wages from Old Dominion as shown on her 1979, 1980, and 1981 W-2 tax forms, and divided this by three years to derive an average annual salary of $3,868. The court then projected this across Williams' period of unemployment, deducting her interim earnings and adding 10 percent annually in prejudgment interest, for a total of $11,393.
 
 II.
 
 9
 Old Dominion contends that the EEOC failed to prove a prima facie case and that the court improperly shifted to Old Dominion the burden of proving that Williams was unable to perform her job duties. We find no merit in these contentions. For the reasons stated by the court below we affirm the conclusion that under either the test of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or a standard of overt intent to discriminate, Old Dominion discriminatorily discharged Williams because of her pregnancy and then discriminatorily refused to rehire her.
 
 
 10
 We further affirm the court's decision that this claim was not barred by Virginia's two-year statute of limitations. Old Dominion's contentions that this claim was barred by laches and that the EEOC made an insufficient effort at conciliation appear not to have been raised below and are, in any event, without merit.
 
 
 11
 Finally, we find no reversible error in the district court's decision to base damages on Williams' wages from Old Dominion during 1979, 1980, and 1981. The damages formula articulated by this court in EEOC v. Korn Industries, 662 F.2d 441 (4th Cir.1981), based on the average salary paid to a hypothetical comparable employee during the back-pay period, may be inappropriate in a case where employees worked widely varied and unpredictable hours, and where the EEOC's evidence regarding comparable employees was apparently confusing. However, when a court uses the wages shown on a W-2 form, it must use care to avoid locking the award into the straitjacket of a calendar year. In this case Williams' W-2 forms showed income for a period of only 25 months (from her date of hire on September 27, 1979, to her date of discharge on October 31, 1981). To arrive at an average monthly salary, therefore, without penalizing Williams for the nine months of 1979 before she was hired by Old Dominion or the two months of 1981 after she was illegally discharged, the court should have divided her total earnings by 25 months, rather than by three years (36 months). We remand to the trial court for correction of this minor arithmetic error.
 
 
 12
 AFFIRMED IN PART; REMANDED IN PART.