Betty **HARRIS–DUKES,**
Plaintiff–Appellee,

v.

**ABBOTT LABORATORIES,**
Defendant–Appellant.

No. 87–3437.

United States Court of Appeals,
Fifth Circuit.

March 15, 1988.

Paul O. Dicharry, Adams & Reese, New Orleans, La., for defendant-appellant.

Hilliard C. Fazande, Michael J. Riley, Sr., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge,
BRIGHT,* and GEE, Circuit Judges.

GEE, Circuit Judge:

Abbott Laboratories appeals from a judgment granting actual and punitive damages against it on the ground that it intentionally discriminated against one of its black, female employees in connection with her request for a job transfer. Mrs. Harris–Dukes' action commenced on several theories and contained class allegations but, as a result of various motions to dismiss, came down by time of trial to her individual claim based on 42 United States Code Section 1981.[1] Because our review of the record reveals little or no evidence of any intent to discriminate against Mrs. Harris–Dukes on the part of Abbott and a considerable amount indicating both favorable treatment of her and substantial efforts on Abbott's part to comply with her wishes, we conclude that the judgment cannot stand.

*Facts*

Mrs. Harris–Dukes, holder of a Bachelor of Science in Marketing and an M.B.A., went to work for the Abbott Laboratories Diagnostic Division in late 1981 and was assigned to positions in Missouri. She progressed rapidly, receiving three performance awards and five raises during her approximately three years with the company. Her work was essentially as a sales representative, calling on prospects and

---

* Circuit Judge of the Eighth Circuit, sitting by designation.

1. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

customers within assigned areas; and her title was Product Specialist. In the early spring of her third year she advised Abbott that she planned to move to New Orleans, having become engaged to marry a resident of that city, and that she would like to obtain a position with the company in the New Orleans area.

Her supervisors were supportive of her efforts and, although there were no existing openings, believed that they would be able to accommodate her within a reasonable time-span. As the year wore on, however, and nothing in New Orleans opened up, Mrs. Harris–Dukes' supervisors suggested that she consider seeking a position in New Orleans with Abbott's two other divisions which operated there, Hospital Products and Pharmaceutical Products. At the supervisors' urging, she interviewed with both of these divisions, creating a positive and favorable impression with each. Some days after her interview, the Hospital Products division called Mrs. Harris–Dukes' supervisor with word of an opening in New Orleans effective January 1 and urging her to return the application form that they had given her so that she could be considered for that position. The supervisor passed this word on to her, but she did not apply; and when he checked again three weeks later and learned that she had still not applied, he pursued the matter no further.[2]

In the meantime, the events upon which the trial court chiefly rested its determination that Mrs. Harris–Dukes had been discriminated against were taking place: various positions had opened in the New Orleans *District*—a large sales division covering most of the State of Louisiana and most of southern Mississippi as well—and been filled with white employees. None were in New Orleans, however, their locations varying from the closest—80 miles away in Baton Rouge—to the farthest—315 miles away in Shreveport. Four were in Mississippi, one was in Lafayette (160 miles), and one in Alexandria (190 miles). There was testimony from Abbott that it was against company policy to permit sales representatives to reside outside their sales territories because of the added travel time and expense so occasioned. Indeed, the testimony was that even *within* the territory a centrally located residence was required, although one employee was permitted to live off-center but in the Biloxi territory, 50 miles away in Slidell, since suitable housing in Biloxi was short at the time because of hurricane damage. The testimony of Abbott's witnesses was unanimous in this regard, and the physical facts of their representatives' locations bear it out.[3]

When no position in New Orleans had opened up by the time Mrs. Harris–Dukes' marriage became imminent, she requested and was granted a year's personal leave. Her formal request for this privilege states that she wishes the leave in order to wait for a product specialist position to open up in New Orleans. While on leave status, she enjoyed certain fringe benefits, but no compensation, from Abbott. A few months after going on leave status, she took other full-time work, thus terminating her association with Abbott. This action followed.

### Analysis

In its analysis of the stated facts, the trial court employed the familiar four-factor formula of *McDonnell–Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for making out a prima facie case of prejudicial treatment: (1) membership in a "minority" group, (2) qualification for and application for a position for which the employer is seeking applicants, (3) rejection despite being qualified, and (4) a continuation of the employer's search for applicants. It is at

---

2. Mrs. Harris–Dukes testified vaguely that she decided not to apply for employment with either division because a position there would not meet "my career needs and goals."

3. A somewhat uncertain light is cast on Mrs. Harris–Dukes' contentions of race prejudice by undisputed evidence that the last available position of the kind she sought in New Orleans—Diagnostic Product Specialist—was held by Mr. Robert Paul, a black male. Mr. Paul was promoted and transferred when his position was eliminated because of business retrenchment and consequently never filled.

the second step of the analysis that the court fell into error, for the record makes plain that during the relevant period Mrs. Harris–Dukes never applied for a position for which Abbott Laboratories was seeking applicants. Rather than doing so, she applied for positions which either did not exist or for which Abbott had no vacancy and was *not* seeking applicants, and declined to apply for a position in a different division for which it *was* seeking them.

It is undisputed that Mrs. Harris–Dukes moved to the City of New Orleans in order to marry and reside there with her husband. Nowhere in it does she indicate a willingness to reside elsewhere in order to continue to work for Abbott and, indeed, such a state of mind would be most unlikely, given that the entire purpose of her move from Missouri was to marry and be with Mr. Dukes. Instead, she wished to reside in New Orleans, to live with her husband there, and to be assigned the sales territory in which New Orleans lies or, failing that, to reside in New Orleans and be assigned a sales territory elsewhere. As for the latter, such an arrangement was against consistent and amply-demonstrated company policy; and seeking it amounted to applying for a non-existent position. The evidence is that Abbott's unvarying policy was to require sales representatives to reside in their sales territories—a policy carrying obvious advantages. Had Mrs. Harris–Dukes been able to produce evidence that other sales representatives resided outside their territories, a different state of proof would have existed.

As for the former—residence in and assignment to the New Orleans territory—no such vacancy existed in her division of Abbott. Such a vacancy did exist in the Hospital Products division, but she declined to apply for it despite being urged to do so because, in her words, a position there would not meet her "career needs and goals." So far from applying for existing

vacant positions for which she was qualified and suffering rejection for them on the ground of her race, Mrs. Harris–Dukes demanded or awaited the creation of positions or vacancies that did not exist and, when neither was forthcoming, brought this action.[4]

Because we conclude that on the undisputed evidence Mrs. Harris–Dukes was not discriminatorily treated, we need not discuss the additional issues brought forward by Abbott regarding damages and attorneys' fees. The judgment of the trial court is **REVERSED** and judgment is here **RENDERED** for the defendant.

---

4. If Mrs. Harris–Dukes. was willing to reside outside New Orleans in order to continue to work with Abbott—a mental disposition which even now she does not claim she held—there is nothing in the record to indicate that she told Abbott of that willingness; and there is no reason to doubt the genuineness of Abbott's belief that she had no interest in a position which required her to reside outside New Orleans, so that there was no occasion to offer her the refusal of such positions.