Alvin **TRIPLETT**, Plaintiff,

v.

Marvin T. **RUNYON**, Jr., Postmaster General, United States Postal Service, Defendant.

No. 95 C 1220.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 10, 1997.

Eileen M. Marutzky, Jonathan C. Haile, U.S. Attorney's Office, Chicago, IL, Ronald Sherman Samuels, Ronald S. Samuels & Associates, Chicago, IL, Herbert Hill, First Asst. Corp. Counsel, Law Dept.–City of Evanston, Evanston, IL, for Alvin Triplett.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

The plaintiff, Alvin Triplett, brought suit against the defendant, Marvin T. Runyon, Postmaster General, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c). The defendant moves for summary judgment. For the following reasons, the motion is granted.[1]

### *Background*

In 1992, Mary Pupkiewicz was employed by the United States Postal Service as Maintenance Manager at the South Suburban Processing and Distribution Center ("South Suburban"). Ms. Pupkiewicz was responsible for all maintenance operations at South Suburban. In 1992, the supervisors working for Ms. Pupkiewicz included Mr. Triplett, Ken Pelech, and David Karaus. Mr. Triplett

---

1. Mr. Triplett's response to Mr. Runyon's summary judgment motion, which was due on June 19, 1997, was never filed. The fact Mr. Triplett did not respond to the summary judgment motion does not change the court's inquiry. *Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 332 (7th Cir. 1993). It does, however, simplify it. I deem admitted all facts set forth in Mr. Runyon's 12(M) statement, because by failing to file a response, Mr. Triplett failed to controvert those facts. N.D. Ill. Local R. 12(N)(3).

is of African–American descent while both Mr. Karaus and Mr. Pelech are white.

In 1992 and 1993, the Postal Service conducted restructuring of personnel and eliminated all supervisory positions in the maintenance department at South Suburban. The restructuring created two positions titled Manager of Maintenance Operations. The Managers of Maintenance Operations were to be responsible for all electronic, mechanical, and janitorial maintenance on all shifts at South Suburban and would report to the Maintenance Manager, Ms. Pupkiewicz. Ms. Pupkiewicz, with the aid of Plant Manager David Fields, was responsible for selecting all of the supervisors in her department. While there was no formal application process and no interviews were conducted, applicants were allowed to submit forms in which they could set forth their qualifications and state their preferences for a new position.

Ms. Pupkiewicz filled positions based upon her knowledge of the individuals, being familiar with their qualifications and performance during her tenure at South Suburban. During December, 1992, and January, 1993, Ms. Pupkiewicz selected Mr. Pelech and Mr. Karaus for the two openings of Manager of Maintenance Operations. Mr. Triplett had applied for these positions. Mr. Triplett was offered a position as Maintenance Engineering Specialist which he accepted.

Ms. Pupkiewicz testified she chose Mr. Pelech and Mr. Karaus as Managers of Maintenance Operations because she believed they were best qualified to discharge the responsibilities of the position. Ms. Pupkiewicz did not believe Mr. Triplett was best qualified because he has a poor attendance record, does not work well under pressure or when given tight deadlines, and would not respond well to the pressures and additional duties that go along with being a Manager of Maintenance Operations for all shifts at South Suburban. Ms. Pupkiewicz testified to more than one example of Mr. Triplett's refusal to fulfill his duties as a supervisor. Mr. Triplett believes the reasons for his not being hired are racially motivated and stem from a "noose" incident that occurred in January, 1992.

## Title VII Claim

The Supreme Court has created a three-part, burden-shifting analysis to examine Title VII claims. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir.1994). The plaintiff must first establish a prima facie case of discrimination by showing: (1) he belongs to some protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) his employer treated similarly-situated employees outside his classification more favorably. *Lenoir,* 13 F.3d at 1132. If the plaintiff makes out a prima facie case of discrimination the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [plaintiff's] rejection." *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824; *Lenoir,* 13 F.3d at 1133. Should the employer meet the burden of showing nondiscriminatory reasons for the plaintiff's rejection, the burden shifts back to the plaintiff to show the employer's explanation is simply a pretext for discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 804, 93 S.Ct. at 1825; *Lenoir,* 13 F.3d at 1133.

■ Viewing the evidence in the light most favorable to Mr. Triplett, it is probable he can make out a prima facie case of discrimination. As an African–American male he is a member of a protected class. He performed his job at South Suburban satisfactorily, earning evaluations of "very good" in both 1992 and 1993. (Def. Ex. 1E & 1F). Mr. Triplett suffered an adverse employment action by being denied the position of Manager of Maintenance Operations. Finally, Mr. Pelech and Mr. Karaus, two similarly-situated white males, were given the job Mr. Triplett sought.

■ Since Mr. Triplett can make out a prima facie case of discrimination, the burden shifts to Mr. Runyon to articulate non-discriminatory, legitimate business justifications for the action taken. Ms. Pupkiewicz, who rejected Mr. Triplett for a manager's position, submitted an affidavit which articulates nondiscriminatory reasons for her hiring de-

cision. From December 1, 1990, to December 31, 1992, Mr. Triplett had nearly four times the number of unscheduled absences as Mr. Pelech and more than eight times the number of unscheduled absences as Mr. Karaus (29 to 8 & 4). Def. Exs. 1A, 1B, & 1C. Ms. Pupkiewicz expressed the belief that Mr. Triplett does not work well under pressure and would not handle the additional duties of being a manager well, particularly being in charge of maintenance on all three shifts at South Suburban. Def. Ex. 2.

Ms. Pupkiewicz cited two situations involving Mr. Triplett that gave her concern regarding his ability to be a Manager of Maintenance Operations. In the first, Mr. Triplett refused to help Postal Inspectors in their efforts to discover a maintenance employee suspected of stealing mail. Ms. Pupkiewicz noted this type of aid would be required from individuals filling the position of Manager of Maintenance Operations. In the second incident, Mr. Triplett did not report to work during a time when his help was needed for a major relocation of South Suburban. Given this undisputed evidence, Mr. Runyon has met his burden of production of showing a nondiscriminatory reason for Mr. Triplett's rejection.

The burden of proving a Title VII claim now shifts back to Mr. Triplett to show Mr. Runyon's explanation for his rejection is merely pretext for discrimination. Mr. Triplett has not met this final burden. The only explanation Mr. Triplett has offered that his rejection was pretext was an incident involving Mr. Pelech and Mr. Karaus where a noose was left in an envelope addressed to Mr. Triplett. Postal inspectors found the incident was intended to be a practical joke and was harmless. Ms. Pupkiewicz, finding such conduct unacceptable, went beyond the Postal Inspector's findings and instructed Mr. Pelech and Mr. Karaus to apologize to Mr. Triplett and issued written letters of warning to Mr. Pelech and Mr. Karaus. (Def. Ex. 3 at 14–15).

Mr. Triplett's advancement of the "noose" incident as the sole grounds to prove a pretext for discrimination is insufficient to carry his Title VII claim. Ms. Pupkiewicz was not the perpetrator of that incident and indeed took affirmative action against the instigators. While Mr. Triplett has made out a prima facie case of discrimination, Mr. Runyon's advancement of nondiscriminatory reasons for Mr. Triplett's rejection remain unrebutted.

### Conclusion

For the foregoing reasons, Mr. Runyon's motion for summary judgment is granted.

