**Tommy WINFIELD, Plaintiff–Appellant,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant–Appellee.**

**No. 00–5460.**

United States Court of Appeals, Sixth Circuit.

Sept. 17, 2001.

Before KRUPANSKY, SUHRHEINRICH, and SILER, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant Tommy Winfield ("Winfield") has challenged a magistrate judge's summary dismissal of his civil rights action against Defendant–Appellee Federal Express Corporation ("Federal Express"). In his complaint, Winfield alleged that Federal Express retaliated against him for having previously filed a civil rights complaint with the Equal Employment Opportunity Commission ("EEOC").

Federal Express hired Winfield as a part-time security officer in December, 1981. In 1993, Winfield applied for a promotion. Federal Express rejected his entreaty. On August 21, 1995, Federal Express denied Winfield's second application for a promotion. On September 4, 1995, Winfield filed an internal complaint chal-

lenging the denial of those applications. Federal Express denied his grievance. On November 30, 1995, Winfield filed a discrimination charge with the EEOC, alleging for the first time that Federal Express declined to promote him because of his race. On August 7, 1997, Winfield requested and received a right-to-sue letter from the EEOC. On November 10, 1997, in conjunction with two other Federal Express employees who believed they too were denied promotions because of their race, Winfield filed suit against Federal Express in the Western District of Tennessee.[1]

Prior to July of 1998, Winfield served as a part-time security officer on the second shift at Federal Express's Air Operations Complex ("AOC") in Memphis, Tennessee. Winfield had obtained this position by bidding for it on the basis of seniority. In July, 1998, Federal Express eliminated the two part-time security positions at AOC, thereby requiring Winfield to bid on shifts available at other Federal Express locations. Winfield thereby obtained a similar shift at another Federal Express facility, the Corporate Technology Center ("CTC"), three miles from AOC.

From August, 1997 through June, 1998, Winfield took a medical leave of absence due to a heart bypass operation performed in August, 1997. On October 30, 1998, Winfield, after returning to part-time duty, produced a letter from his physician, prescribing that the amount of time Winfield walk or stand be restricted. Minnie Howard ("Howard"), Winfield's supervisor, and Pat Walsh ("Walsh"), Howard's supervisor, requested that Winfield obtain additional information from his physician so that they could more fully understand the nature of Winfield's condition. In the interim, How-

ard placed Winfield on paid sick leave. On November 13, 1998, Winfield provided Howard with a second letter from his physician. In that second letter, the doctor indicated that Winfield could not perform the basic duties of a security officer, namely "run in pursuit of a suspect, physically subdue a suspect, use physical force to protect himself and others, [and/or] handle high profile emergencies ...." This restriction was to continue for approximately three months.

Federal Express normally places individuals with temporary medical restrictions on light duty. Given the fact that Winfield had failed his firearms re-qualification test and due to his pervasive medical restrictions, Federal Express determined that there were no limited duty positions available for that time period (November, 1998 through February, 1999) for which he qualified. Federal Express provided Winfield with an unpaid leave of absence. On February 5, 1999, Winfield returned to work.

At all times relevant to the matter before the court, Federal Express has required each of its Memphis, Tennessee security officers who carry firearms to possess a special deputy firearms commission from the Shelby County Sheriff's Office. The security officers must re-qualify for their commissions on a semiannual basis. The security officers are tested by the Sheriff's Department at its firing range and Sheriff's Department employees grade their efforts. However, Federal Express sets the requirements for qualification. Prior to August of 1998, officers were required to achieve an eighty per cent score on four firearms tests: (1) day handgun; (2) night handgun; (3) day shotgun; and (4) night shotgun. Failure to achieve the

---

1. On May 27, 1999, the district court dismissed that action. On January 4, 2001, a separate panel of this court affirmed the deci-

sion of the district court. *See Parks, et al v. Fed. Express Corp.,* 1 Fed.Appx. 273 (6th Cir. 2001).

requisite score would cause the officer to forfeit his commission, although he could retake the tests until he passed.

In August, 1998, Federal Express modified its qualification test requirements. Federal Express thereafter permitted its security officers six attempts over three days to pass. If the officer failed each of the six attempts, the officer would be unqualified for a security officer position at Federal Express. In the interim, while the officer attempted to pass the tests before his quota of attempts expired, he would be placed in an unarmed, nonenforcement position.

On September 2, 1998, Winfield failed to pass his first two attempts. Consequently, Federal Express placed Winfield in a position with non-enforcement duties. On September 18, 1998, Winfield failed to pass two more attempts. Faced with two final attempts before his quota expired, Winfield went on the aforementioned medical leave until February 5, 1999. On March 2, 1999, a month after his return to work, Winfield failed his third and final requalification attempts. Winfield never requested a re-grade of any of his attempts.

Because Winfield did not possess a special deputy commission from the Sheriff's Department, he was ineligible for a security officer position with Federal Express. Federal Express offered Winfield a ninety-day leave in which to apply for a position for which he qualified. In lieu of the unpaid leave, Federal Express offered Winfield a non-commissioned security guard position, albeit at reduced compensation, which would not require Winfield to carry a firearm. Winfield accepted this offer and continues to serve as a non-commissioned security guard for Federal Express.

On November 25, 1998, Winfield initiated a complaint in federal court against Federal Express, alleging retaliation in violation of 42 U.S.C. § 1981, alleging that Federal Express (1) eliminated the part-time positions at AOC in retaliation for his previous filing of a civil rights complaint; (2) placed Winfield on unpaid medical leave instead of limited duty in retaliation for the earlier complaint; and (3) conspired with the Sheriff's Department to withhold the special firearms commission from Winfield because of his earlier complaint. On March 16, 1999, the parties consented to trial by a magistrate judge. *See* 28 U.S.C. § 636(c)(1). On December 1, 1999, Federal Express moved for summary judgment on all of Winfield's claims, contending that Winfield had not presented a prima facie case of retaliatory discrimination and that Federal Express's proffered explanations were not pretextual. On January 3, 2000, Winfield filed his response, arguing that genuine issues of material fact remained for jury consideration.

On February 10, 2000, in a well-reasoned opinion, the magistrate awarded summary judgment to Federal Express. Applying the burden-shifting analysis explicated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the magistrate concluded that Winfield had failed to erect a prima facie case in support of his claim of retaliation with regard to the elimination of positions at AOC [2] and Winfield's failure to qualify for a special firearms commission.[3] The magistrate further determined

---

**2.** Because Winfield was able to obtain a substitute position with Federal Express at the same compensation level and hours per week as the one he had at AOC, the magistrate concluded that Winfield had not evidenced an adverse employment action necessary to support a claim for retaliation.

**3.** Because Winfield had not submitted admissible evidence that any members of the Shelby

that Winfield had not adduced evidence which would permit a reasonable jury to find that Federal Express's proffered explanations for any of its challenged actions were pretextual.

This court has carefully reviewed the materials contained in the Joint Appendix and the arguments presented in the briefs of counsel submitted by the parties and concludes that the magistrate's award of summary judgment to Federal Express was mandatory as a matter of law due to Winfield's failure to submit evidence supporting his claim of retaliation. The record reflects beyond contravention that Federal Express undertook each of its challenged actions without reference to Winfield's earlier civil rights complaint. This reviewing court therefore adopts the magistrate's opinion entered February 10, 2000.

On March 1, 2000, Winfield moved to alter or amend the magistrate's judgment pursuant to FEDERAL RULE OF CIVIL PROCEDURE 59(e). On March 8, 2000, the clerk of court entered final judgment. On March 9, 2000, the magistrate denied Winfield's motion, finding that the motion was premature as the clerk had not yet entered final judgment when Winfield's motion was filed. On April 4, 2000, Winfield timely filed his notice of appeal of both the summary adjudication and the magistrate's denial of his Rule 59(e) motion.

The magistrate denied Winfield's motion to amend or alter the judgment because it was filed a day before the clerk of court entered judgment and was therefore premature. That mandate contravened the plain language of the Rule and its accompanying commentary. *See* FEDERAL RULE OF CIVIL PROCEDURE 59(e)

("Any motion to alter or amend a judgment shall be filed *no later than* 10 days after entry of the judgment.")(emphasis added); Advisory Committee Notes, 1995 Amendments to Rule 59 ("The phrase 'no later than' is used-rather than 'within'-to include post-judgment motions that are sometimes filed before actual entry of the judgment by the clerk.").

However, the magistrate additionally resolved, in the alternative, that even if the motion were timely, it should be denied because it merely rehashed previously rejected arguments and referenced evidence which should have been proffered at the summary judgment stage. In his briefs before this reviewing court, Winfield has not challenged that finding by the magistrate. Because, in the circumstance of this case, only "newly discovered evidence" could support a Rule 59(e) motion, the magistrate's denial of the motion was not an abuse of discretion. *See Emmons v. McLaughlin,* 874 F.2d 351, 358 (6th Cir. 1989) ("It is well established, however, that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment."). Having thoroughly examined Winfield's submissions to this court, the reviewing court adopts the magistrate's alternate rationale for overruling Winfield's Rule 59(e) motion.

Accordingly, the magistrate's orders awarding summary judgment in favor of Federal Express and denying Rule 59(e) relief to Winfield are AFFIRMED.

---

County Sheriff's Department responsible for grading Winfield's firearms tests knew of Winfield's pending lawsuit, the magistrate concluded that Winfield failed to prove a causal connection between his earlier filing of a lawsuit and his failures of the firearms tests.