**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1011**

JAMES M. DARNELL,

Plaintiff - Appellant,

v.

TYSON FOODS, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:11-cv-00473-RJC-DCK)

Submitted: July 15, 2013          Decided: July 31, 2013

Before DUNCAN and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Kirk J. Angel, THE ANGEL LAW FIRM, PLLC, Concord, North Carolina, for Appellant. Kevin J. Dalton, Matthew R. Korn, FISHER & PHILLIPS LLP, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James Darnell (Darnell) appeals the district court's decision to grant summary judgment to his former employer, Tyson Foods, Incorporated (Tyson). Darnell alleged that Tyson intentionally discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. This case centers on the proposed reassignment of Darnell from a supervisory position on the first shift to a supervisory position on the third shift. We agree with the district court that Darnell is unable to establish a prima facie case of discrimination because the proposed reassignment does not satisfy the threshold ADEA requirement of an adverse employment action. Accordingly, we affirm.

I

Darnell became an employee of Tyson in 1989 when Tyson purchased a poultry processing facility owned by Holly Farms, Inc. in Wilkesboro, North Carolina. In June 1992, Darnell voluntarily transferred to a maintenance technician position at Tyson's Monroe, North Carolina processing plant (Monroe Plant). In December 1996, Darnell was promoted to the position of maintenance supervisor in the labeling department, a position he held at the Monroe Plant until his resignation in May 2010.

Darnell typically arrived at the Monroe Plant around 6:00 a.m. and ended his shift around 5:00 p.m.

The Monroe Plant had five departmental equipment lines at the time of Darnell's resignation and a maintenance supervisor assigned to each line: evisceration; debone; cut-up; net-weight; and labeling. Only the labeling line regularly operated during the third shift. During the third shift, the machines at the Monroe Plant were cleaned and preventive maintenance was performed by a crew of maintenance technicians so the equipment was ready to run at the start of the first shift.

On December 1, 2009, the positions of thirty-six year old Assistant Maintenance Manager Glenn Rossi (Darnell's superior) and fifty-six year old third shift Maintenance Supervisor Jimmy Vo (Vo) were eliminated through a reduction in force to reduce costs. At the time of his termination, Vo's regularly scheduled hours were from 11:00 p.m. until approximately 9:00 a.m. Vo was the only maintenance supervisor and member of management on the third shift and his termination left the third shift with no management supervision.

By the end of December 2009, there was an increase in the frequency of machines breaking down that resulted in a marked decrease in production at the Monroe Plant. On March 4, 2010, Plant Manager Jonathan Edwards (Edwards) provided written disciplinary counseling to former Maintenance Manager David

McHugh (McHugh) regarding the need to correct the increased equipment breakdowns and rectify the preventive maintenance deficiencies. There were no significant improvements during March 2010, and, on April 2, 2010, Edwards notified McHugh that he was being removed from the maintenance manager position, effective April 19, 2010.

In March 2010, Tyson sent Dennis Joy (Joy) from its corporate office in Springdale, Arkansas to the Monroe Plant to analyze the processes, costs, and performance of the maintenance departments at the plant. In performing this analysis, Joy was concerned about the lack of maintenance supervision on the third shift and that preventive maintenance was not being performed, resulting in significant and increasing equipment failures. Because an additional maintenance supervisor position could not be added due to the costs involved, Joy concluded that one of the five maintenance supervisors at the Monroe Plant needed to have his schedule adjusted to cover the third shift, provide management presence, and ensure preventative maintenance was being properly performed.

Joy recommended to Edwards that Darnell's schedule be adjusted based on Darnell's training and experience in the labeling department and relative lack of experience in the other departments. In reaching his recommendation, Joy analyzed the qualifications of all of the maintenance supervisors and whether

any of the other supervisors would be a better fit for the shift adjustment, but Darnell's experience in labeling, and his inexperience in the other departments, made him the only feasible choice.

Darnell was initially informed of the reassignment decision during a meeting on April 23, 2010. Darnell agreed a maintenance supervisor was needed on the third shift, but said he was not interested. After the meeting, Joy and Complex Human Resources Manager Leonard Parks (Parks) discussed whether the third shift 11:00 p.m. to 9:00 a.m. schedule could be modified in an effort to find an alternative that Darnell might accept that would also comply with business needs. They came up with two potential options. One option was a 3:00 a.m. to 1:00 p.m. shift for Darnell that would also entail adjusting the schedule of a second shift maintenance supervisor to stay later until Darnell arrived. Another alternative was to permit Darnell, if he preferred, to take a non-management maintenance technician position on the first shift and Tyson would hire a maintenance supervisor for the third shift. Edwards was advised of and approved the potential alternatives to be offered.

On April 24, 2010, a second meeting was held, with Edwards, Joy, Parks, and Darnell present. Darnell was provided with the other two options as alternatives to the 11:00 p.m. start time. Darnell was advised to let them know his decision on Monday,

April 26, 2010.  Darnell said "There ain't no way in hell I'm going to do that" and walked out of Edwards' office and slammed the door behind him.  (J.A. 121).  After leaving the meeting, Darnell told several hourly maintenance employees: "These damn fools think I'm going to go third shift."  (J.A. 128).  This was the last shift Darnell worked at the Monroe Plant.

On April 26, 2010, rather than advising Tyson of his decision, Darnell informed Joy: "I got five weeks' vacation.  I want two of them right now."  (J.A. 124-25).  Regarding Darnell's decision to continue employment, Darnell told Joy: "I'll let you know what I think about it when I come back." (J.A. 126).  Darnell was granted the two-week vacation request until May 10, 2010.

On May 10, 2010, Darnell met with Parks and informed him that he was not going to adjust his schedule.  Darnell resigned and left the Monroe Plant.  At the time of his resignation, Darnell was sixty-three years old.  After Darnell's resignation, Tyson temporarily adjusted the schedules of its four other maintenance supervisors by extending their working hours to twelve-hour shifts for over seven months while a search for a replacement was performed.  Kevin Shaw was hired to become the third shift maintenance supervisor in December 2010.  Shaw was fifty-seven years old at the time he was hired.

On September 22, 2011, Darnell sought relief under the ADEA by filing a complaint in the United States District Court for the Western District of North Carolina. Following the close of discovery, Tyson filed a motion for summary judgment, which the district court granted on December 7, 2012. The district court concluded that Darnell could not establish a prima facie case of age discrimination because he failed to offer sufficient evidence to demonstrate that: (1) the proposed reassignment constituted an adverse employment action; (2) he was constructively discharged; and (3) he was replaced by a substantially younger individual.

This timely appeal followed.


II

A

We review the district court's grant of summary judgment de novo. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Rule 56 mandates the entry of summary

judgment if the nonmoving party, after a reasonable time of discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial [and] [t]he moving party is entitled to a judgment as a matter of law." Id. at 323 (internal quotation marks omitted).

B

The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Absent direct evidence of intentional discrimination, we analyze ADEA claims under the burden-shifting framework established for Title VII claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513–14 (4th Cir. 2006). Under this framework, Darnell must first establish a prima facie case of age discrimination by a preponderance of the evidence. Id. at 513. To establish a prima facie case of age discrimination, Darnell must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job

duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. Hill, 354 F.3d at 285.

If a prima facie case is established, the burden shifts to Tyson to demonstrate "a legitimate, nondiscriminatory reason" for the adverse employment action. Warch, 435 F.3d at 513–14. If Tyson meets this burden, "the presumption of discrimination created by the prima facie case disappears from the case and the plaintiff must prove that the proffered justification is pretextual." Id. at 514 (internal quotation marks omitted).

We agree with the district court that Darnell failed to establish a prima facie case of age discrimination because there was no adverse employment action. In James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371 (4th Cir. 2004), we stated that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. at 376 (citation, alterations, and internal quotation marks omitted).

It is undisputed that Darnell's salary, benefits, job title, and promotion opportunities were not threatened by the proposed reassignment. He testified at his deposition that his job duties "would be basically the same," but that he would be working at "a different time." (J.A. 136). Moreover, the duration of the new shift was not longer than the duration of his first-shift schedule. In short, the change in time, without any change to Darnell's terms and conditions of employment, does not constitute an adverse employment action. Id. Because Darnell cannot demonstrate that the proposed reassignment was an adverse employment action under the ADEA, the district court correctly granted Tyson's motion for summary judgment.[*]

## III

For the reasons stated herein, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[*] Because Darnell cannot demonstrate that the proposed reassignment was an adverse employment action, we need not decide the issues of whether Darnell was constructively discharged or whether he was replaced by a substantially younger individual.