83 F.3d 428
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marie Rollin PAULK, Plaintiff-Appellant,
v.
SEA-LAND SERVICES, INC., Defendant-Appellee.
 No. 94-16994.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 12, 1996.
Decided April 17, 1996.
 
 Before: HUG, Chief Judge, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Marie Rollins Paulk, appeals the district court's summary judgment in favor of her former employer, Sea-Land Services, Inc. ("Sea-Land"), in Paulk's action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. In her complaint, Paulk, an African-American, alleged that her discharge from Sea-Land was based on race discrimination. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Background
 
 
 4
 Paulk was hired in 1973 by Sea-Land, a transporter of containerized freight, and given several promotions. In 1990, Paulk was promoted to the position of supervisor for outbound freight. In this position, she was responsible for interviewing, selecting, and supervising independent trucking companies ("carriers") who transported freight for Sea-Land out of Oakland, California.
 
 
 5
 In August 1990, Sea-Land initiated a Partners In Quality program ("PIQ") designed to limit the number of independent carriers used by Sea-Land and to centralize management authority over the carriers in Dallas, Texas. Paulk was involved in nominating carriers for Sea-Land's Oakland facility, but did not participate in interviewing the carriers. Five carriers were selected. One of the selected carriers was Moore & Sons Trucking Company ("Moore Trucking"). Under PIQ, Paulk was no longer responsible for selecting carriers for each haul because each PIQ carrier was assigned a specific territory. Paulk, however, still was responsible for selecting an alternate carrier if the normal PIQ carrier was unavailable. Paulk also handled customer complaints against the carriers, including complaints against Moore Trucking.
 
 
 6
 In the summer of 1991, Paulk began a romantic relationship with Loyal Moore, the owner of Moore Trucking. In August 1991, they opened a joint checking account. From August 1991 to June 1992, Moore deposited approximately $1,000 a month into the account. Moore did not write any checks on the account. They also leased an apartment and furnished it together. The apartment was Paulk's primary residence, but Moore spent several nights a week there. They also took several vacations together paid for by Moore. Paulk and Moore consciously choose to keep their relationship confidential from Sea-Land. Moore stated that Paulk did not want Sea-Land to know of the relationship because she feared that Sea-Land would find a "conflict of interest." Sea-Land's conflict-of-interest policy requires employees to refrain from "having any financial or other relationship in or with a third party which does business with [Sea-Land] in a situation where the [e]mployee represents or has authority for [Sea-Land] interests."
 
 
 7
 In May 1992, Sea-Land learned of Paulk's relationship with Moore when several of Sea-Land's managers received anonymous letters containing a copy of a check from Paulk's and Moore's joint account and a copy of a telephone bill addressed to Moore at Paulk's address. Sea-Land interviewed both Paulk and Moore about their relationship. Paulk was subsequently terminated for violating Sea-Land's conflict-of-interest policy. Sea-Land also terminated its business relationship with Moore Trucking as a result of Moore's financial relationship with Paulk.
 
 
 8
 Paulk filed a complaint against Sea-Land with the Equal Employment Opportunity Commission ("EEOC") in February 1993 alleging that her termination was race based. The EEOC issued Paulk a "right to sue" letter in May 1993.
 
 
 9
 On August 13, 1993, Paulk filed a complaint against Sea-Land under Title VII and various other federal and state statutory and constitutional grounds. Sea-Land moved for summary judgment which the district court granted. The court held that even assuming Paulk had established a prima facie case of discrimination, Sea-Land had rebutted that presumption by providing a legitimate nondiscriminatory reason for her discharge based on her violation of Sea-Land's conflict-of-interest policy. The district court also found that Paulk had failed to raise a genuine issue of material fact as to whether Sea-Land's reason was pretextual. Paulk had sought to show that Sea-Land's reason for discharging her was pretextual by showing that Caucasian employees who also had conflicts of interest had not been subject to discharge. The court found that the two situations cited by Paulk were not similar to her situation and did not result in conflicts of interest under Sea-Land's conflict-of-interest policy. Paulk timely appeals.
 
 II
 Standard of Review
 
 10
 " 'We review the district court's grant of summary judgment de novo to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.' " See Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994) (quoting Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1074 (9th Cir.1986)).
 
 III
 Analysis
 
 11
 To state a prima facie case of employment discrimination under Title VII, a plaintiff generally is required to show that: (1) she was within the protected class; (2) she was performing her job in a satisfactory manner; (3) she was discharged; and (4) she was replaced by a member of an unprotected class with equal or inferior qualifications. See Wallis 26 F.3d at 891; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the plaintiff states a prima facie case of discrimination, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the discharge. Wallis, 26 F.3d at 889. If the employer is able to do so, the plaintiff must show that the employer's proffered reason is a pretext for a discriminatory motive in order to prevail. Id. (once the employer articulates a legitimate, nondiscriminatory reason for the discharge, the "presumption of unlawful discrimination 'simply drops out of the picture' " (quoting Saint Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993))). Thus, in order to survive summary judgment, the plaintiff must raise a genuine issue of material fact by producing " 'specific, substantial evidence' " that the employer's reason for discharge was pretextual. See Wallis, 26 F.3d at 890 (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983)).
 
 
 12
 Here, even if we assume that Paulk states a prima facie case of discriminatory discharge, Sea-Land provided a legitimate nondiscriminatory reason for her discharge based on Sea-Land's conflict-of-interest policy. Thus, to survive summary judgment, Paulk must produce specific, substantial evidence that Sea-Land's reason for discharge was pretextual. See Wallis, 26 F.3d at 890. Paulk sought to show that Sea-Land's reason for discharging her was pretextual by showing that similarly situated Caucasian employees at Sea-Land had not been subject to discharge. Paulk cited two conflict-of-interest situations involving Caucasian employees, which she claims were comparable to her situation, but which did not result in discharge. Unfortunately for Paulk, these situations are readily distinguishable.
 
 
 13
 In the first example, Diana Williams-Coopersmith, a Caucasian, married Chris Coppersmith, the owner of a customs brokerage, while she was employed as a sales agent at Sea-Land. Sea-Land does not hire customs brokers, although its customers sometimes do. Because Sea-Land does not hire customs brokers, Williams-Coopersmith could not have used her position at Sea-Land to select or recommend her husband's company to perform services for Sea-Land. Thus, Williams-Coopersmith was not involved in a "financial or other relationship in or with a third party which does business with the Company in a situation where the Employee represents or has authority for Company interests," as provides in Sea-Land's conflict-of-interest policy. Accordingly, Sea-Land's failure to take disciplinary action against Williams-Coopersmith does not provide support for Paulk's claim that her discharge was pretextual.[1]
 
 
 14
 In the second example, three Sea-Land truck drivers, formed a partnership to provide dunnage and other wood products to Sea-Land. Sea-Land had knowledge of the employees' interest in the partnership and, again, none of the employees were in a situation where they represented or had authority for the company's interests in the purchase of dunnage. Thus, this situation does not support Paulk's contention that the proffered reason for her discharge was pretextual.
 
 
 15
 Given that Paulk presented no other evidence of discriminatory intent on the part of Sea-Land, other than the evidence offered to establish a minimal prima facie case, Paulk has failed to present a genuine issue of material fact concerning the legitimacy of Sea-Land's nondiscriminatory reason for her discharge, and Sea-Land is entitled to summary judgment. See Wallis, 26 F.3d at 892.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Paulk also contends that Williams-Coopersmith had a conflict of interest between Sea-Land and her husband's customs brokerage because the brokerage received a commission from Sea-Land for freight shipped with Sea-Land by the brokerage's clients. This argument lacks merit. First, it appears that the commission is given to the brokerage as an incentive to have its clients use Sea-Land. In this type of situation, no conflict of interest is created between the brokerage and Sea-land. Second, in any event, Williams-Coopersmith is not in a position in which she "represents or has authority" for Sea-Land regarding Sea-Land's involvement with customs brokers and any commission which they are paid
 In her reply brief, Paulk also argues that Williams-Coopersmith violated another provision of Sea-Land's conflict-of-interest policy which states that "[n]o [e]mployee should gain financially or otherwise from a firm or individual with whom [Sea-Land] does business." When read in the context of the entire conflict-of-interest policy, however, it is clear that Williams-Coopersmith's activities do not create a conflict of interest.