

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-5-2004

# Royer v. PA State University

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3873

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Royer v. PA State University" (2004). *2004 Decisions.* Paper 1118.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1118

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3873

MARGO L. ROYER,

Appellant

v.

PENNSYLVANIA STATE UNIVERSITY
*TEAMSTERS LOCAL UNION NO. 8

*(Dismissed Pursuant to Court's Order of 7/23/03)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 00-cv-290J)
District Court Judge: Honorable D. Brooks Smith

Submitted Under Third Circuit LAR 34.1(a)
December 5, 2003

Before: SLOVITER, ALITO, <u>Circuit Judges</u>, and OBERDORFER,[1] <u>District Judge</u>.

(Opinion Filed: January 5, 2004)

---

[1] Honorable Louis F. Oberdorfer, U.S. District Judge for the District of Columbia, sitting by designation.

OPINION OF THE COURT

PER CURIAM:

I

Appellant Margo Royer challenges the District Court's decision granting summary judgment to her former employer on her Title VII claim that she was fired in retaliation for complaining of sexual harassment. We affirm because we agree with the District Court that Pennsylvania State University ("the University") articulated a legitimate, nondiscriminatory reason for Royer's termination and that Royer failed to present sufficient evidence from which a reasonable jury could reject the University's explanation for her termination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973) (setting forth burden-shifting framework for evaluating discriminatory treatment claims). As we write only for the parties, and as Royer concedes the accuracy of the District Court's factual recitation, we will not restate the full facts of the case.

II

In essence, Royer's complaint is that her supervisors not only failed to take seriously her allegations that she was being sexually harassed by one of her co-workers – first, by his unwanted sexual attention and, after she complained about that, by retaliatory conduct including ridicule and interference with her job duties – but that they ultimately fired her for having made those allegations.

The University claims that it properly terminated Royer, in accordance with the collective bargaining agreement that governed her employment, because she received three "warning letters" within a one-year period. It is undisputed that: (1) Royer received an initial warning letter on November 11, 1998 because she did not comply with the policy requiring her to leave her keys in a campus "lock box," despite having received prior notice of the policy and prior complaints of her failure to comply with it; (2) Royer received a second warning letter on February 15, 1999 because she posted on the faculty and employee electronic message board (or "listserve") a letter to the University President regarding her dismissal from the University's occupational therapy program, despite having received two prior warnings that she would be disciplined if she did not restrict her use of the listserve to employment-related issues; and (3) Royer received a third and final warning letter on May 5, 1999 after a hidden surveillance camera recorded her looking at papers on her supervisor's desk without authorization while she was supposed to be cleaning his office.

Because the University articulated a legitimate, nondiscriminatory reason for its action, the burden shifted to Royer to produce sufficient evidence from which a reasonable jury could reject the proffered explanation and find the termination a pretext for discriminatory action. McDonnell Douglas, 411 U.S. at 804-05. Although Royer attempts to satisfy this burden by claiming that the factual predicates for the first two warning letters "are suggestive of such irregularity as to easily support a reasonable

3

inference of pretext," App't Br. at 17, the record evidence she cites does not provide an adequate basis for a reasonable factfinder to reject the University's proffered explanation for her termination. For example, although Royer claims (without apparent evidentiary support) that the co-worker about whose harassment she had complained *may* have taken the key to the lock box to prevent her from leaving her keys inside it, this charge of sabotage is untenable in light of Royer's concession that she knew of prior occasions on which that key was missing and that she had been issued her own key to the lock box. Royer's charge that her supervisor "overreached and/or outright manufactured bases upon which to discipline her" by issuing the second warning letter for actions that "had nothing whatsoever to do with her employment," rings similarly hollow in light of the fact that she had *twice* been warned not to use the computer system for issues unrelated to her employment and had been explicitly told she would face "disciplinary action" if she did not comply with these warnings. Not only does this history show Royer's action to have been insubordinate, the issuance of multiple warnings prior to taking disciplinary action is flatly inconsistent with her claim that the base for the warning letter was "manufactured."

There is, quite simply, no evidence to suggest that *any* of the warning letters were issued in order to retaliate against Royer for her complaints of sexual harassment. In fact, Royer's only argument that the University's disciplinary actions were tied to her complaints of harassment appears to be her claim that John Luchini, the supervisor "who did not take Plaintiff's complaints of discriminatory harassment seriously," either issued

4

or "participated in" the issuance of each warning letter. There is, of course, nothing sinister about Luchini's having been involved in each warning letter; he was, after all, Royer's boss. Thus, Royer's argument for pretext boils down to the single allegation that Luchini did not take her complaints of sexual harassment seriously. Regardless of whether this is true, there is no evidence from which a jury could find any link between Luchini's response to Royer's allegations and his issuance of warning letters for improper conduct that Royer *admittedly* engaged in.

## III

Because Royer failed to satisfy her burden of producing evidence sufficient to demonstrate that the University's proffered reason for her termination was pretext, we will affirm the District Court's decision granting summary judgment for the defendant.